In the Matter of the State use Tax
Liability of THERMOSET
PLASTICS, INC.

THERMOSET PLASTICS, INC.,
Plaintiff and Appellee,

v.

The STATE of South Dakota, DEPART-
MENT OF REVENUE, Defendant
and Appellant.

Nos. 17273, 17286.

Supreme Court of South Dakota.

Argued March 20, 1991.

Decided July 3, 1991.

Rita D. Haverly, Hagen & Wilka, P.C.,
Sioux Falls, for plaintiff and appellee.

Timothy T. Weber, Dept. of Revenue,
Pierre, for defendant and appellant; Roger
A. Tellinghuisen, Atty. Gen., Pierre, on
brief.

## PROCEDURAL HISTORY/ISSUES

HENDERSON, Justice.

The Department of Revenue conducted a
sales and use tax audit of Thermoset Plas-
tics, Inc. (Thermoset) for the period of Sep-

tember, 1986 through June, 1988. It was determined that Thermoset under-reported tangible personal property and services purchased for use in South Dakota. It was assessed $9,713 plus interest.

Thermoset challenged the additional assessment whereupon an administrative hearing was held. The Secretary of Revenue basically affirmed the audit assessment on October 11, 1989, and Thermoset appealed to the circuit court. The circuit court affirmed the Secretary's Order in part and reversed it in part on June 23, 1990.

The State of South Dakota, Department of Revenue raises five issues on appeal:

1. Was Thermoset's purchase in Minnesota of a used forklift, which was more than seven years old, exempt from use tax? We hold that it is not exempt.
2. Is Thermoset subject to use tax for services provided by an out-of-state accounting firm used in South Dakota? We hold that it is subject to use tax.
3. Is Thermoset liable for use tax on the cost of prototype molds designed for use in South Dakota? We hold that it is liable for use tax.
4. Are poly pails intended ingredients of Thermoset's finished product? We hold they are not.
5. Is Thermoset liable for use tax on the rental of equipment used in its manufacturing process? We hold that it is liable for use tax.

Thermoset raises two issues by Notice of Review: Is Thermoset entitled to the exemption of SDCL 10–46–9 on all materials which it consumes in the manufacturing process and does the charge from Bulk Molding Company represent a tax exempt transaction?

We affirm the Secretary, thereby reversing the circuit court in part and affirming the circuit court in part.

## FACTS

Thermoset, a corporation located in Mitchell, South Dakota, is a manufacturer of compression molded plates. It com- menced operations in this state in January, 1987.

On September 3, 1986, Thermoset's organizers ordered three prototype molds from a plant in St. Charles, Illinois, that were needed to qualify the product that Thermoset intended to produce. However, at that point, Thermoset had not yet determined that it would locate in South Dakota. It was considering locations in Minnesota, Arizona, Arkansas or Ohio. According to Thermoset, the prototype molds ordered by Thermoset's organizers have never been used, stored or consumed in South Dakota for production or otherwise and have never entered South Dakota. At the time Thermoset's organizers located in South Dakota, two of the prototype molds were obsolete and their value was limited to that of scrap.

Before Thermoset decided to commence operations in South Dakota in 1986, Thermoset's organizers incurred $8,000 in fees for preparation of a cash flow statement by Arthur Anderson in Phoenix, Arizona. However, the circuit court, reversing the Secretary, determined that Thermoset did not use the Arthur Anderson accounting services in South Dakota. It reasoned that the 1986 cash flow statement was based on a different product line, different manufacturing equipment, and a different labor structure than what later materialized in South Dakota in 1987.

There was testimony at the administrative hearing as to how several items listed as taxable items were consumed in the manufacturing process and, at some times, even becoming part of the finished product. The circuit court determined that suction cups, brushes, blades, chips for deflasher, molds, belts, gloves and magnetic tape only accidentally or incidentally become incorporated in the finished product. However, it determined poly pails are intended by Thermoset to be incorporated into the finished product, thus exempted.

A 1971 model forklift was also listed by the auditor as being subject to use tax. The forklift was bought used in Minnesota. The auditor also listed extruder rent to Bulk Molding Company as taxable. At the

time Thermoset was ready to begin production, it did not have mixing equipment. It therefore agreed to a three month extrusion equipment rental agreement with Bulk Molding Company.[1] Thermoset argues that this rent was actually payment for raw materials.

## DECISION

Our standard of review in this case is governed by SDCL 1–26–36. This requires us to "give great weight to the findings made and inferences drawn [by the administrative agency] on questions of fact." *Deuschle v. Bak Const. Co.*, 443 N.W.2d 5 (S.D.1989). Further, we review the record in the same light as does the trial court and determine if the administrative agency's decision was clearly erroneous in light of all of the evidence. *In re Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986). However, on questions of law, we may "interpret statutes without any assistance from the administrative agency." *Permann v. South Dakota Department of Labor*, 411 N.W.2d 113 (S.D.1987).

I. *Under SDCL 10–46–2,[2] Thermoset is liable for use tax for the forklift purchased out-of-state for use in South Dakota.*

■ The construction of a statute is a question of law. Because the question of whether a statute imposes a tax under a given factual situation is a question of law, no deference is given to any conclusion reached by the Department. *Midcontinent Broadcasting v. Revenue Dep't*, 424 N.W.2d 153 (S.D.1988). Further, statutes which impose taxes are to be construed liberally in favor of the taxpayer and strict-ly against the taxing body. Ambiguities in a statute imposing a tax are interpreted in favor of the taxpayer. *Nash Finch Co. v. South Dakota Dep't of Revenue*, 312 N.W.2d 470 (S.D.1981).

■ Thermoset contended at the administrative and circuit court levels that SDCL 10–46–3 [3] exempts the purchase of the forklift from use tax liability because the forklift is more than seven years old and Thermoset purchased it used from a Minnesota dealer who did not originally purchase it for use in South Dakota.[4] SDCL 10–46–3 deals with two situations: (1) Where property is *less* than seven years old and not originally purchased for use in this state and (2) Where property is *more* than seven years old and not originally purchased for use in this state. If the first scenario is true, then excise tax is imposed under SDCL 10–46–3. If the second scenario is true, then no excise tax is imposed under SDCL 10–46–3. The common factor in these two scenarios is that SDCL 10–46–3 deals with personal property "not purchased for use in this state." In the present case, Thermoset's general manager testified that Thermoset bought a used forklift in Minnesota for immediate shipment to Mitchell; that Thermoset did not use the forklift in Minnesota except to load other items bought by Thermoset on the truck that brought the forklift to Mitchell; and that Thermoset did not pay any tax in Minnesota on the purchase. The auditor testified that the forklift was used in Thermoset's backroom for loading and unloading. Therefore, SDCL 10–46–2 is the appli-

1. Extrusion equipment is used to compress air from raw materials.

2. **10–46–2. Tax on tangible personal property purchased for use in state—Rate based on purchase price.** An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for use in this state at the same rate of percent of the purchase price of said property as is imposed by §§ 10–45–2 and 10–45–3 or amendment which may hereafter be made thereto.

3. **10–46–3. Tax on tangible personal property not purchased for use in state—Rate based on fair market value.** An excise tax is imposed on the privilege of the use, storage and consump-tion in this state of tangible personal property which is seven or less years old not originally purchased for use in this state, but thereafter used, stored, and consumed in this state, at the same rate of percent of the fair market value of said property as is imposed by §§ 10–45–2 and 10–45–3.

4. We believe that Thermoset is misapplying SDCL 10–46–3. It puts emphasis on the fact that the forklift was purchased from a Minnesota dealer who did not originally purchase it for use in South Dakota. Obviously, we are not concerned with the Minnesota dealer's intentions. We are only interested in the liability of the party subject to audit, namely, Thermoset.

cable statute in this case, not SDCL 10–46–3. SDCL 10–46–2 imposes use tax on the *privilege of using* in South Dakota tangible personal property that is purchased for use in the state. Thermoset originally purchased the forklift, tax free, in Minnesota for use in South Dakota. Thus, the purchase of the forklift is "use taxable" under SDCL 10–46–2.

II. *Thermoset used the services provided by an out-of-state accounting firm in South Dakota and is subject to use tax.*

■ SDCL 10–46–2.1 provides, in pertinent part, that a use tax is levied "for the privilege of using services in South Dakota," imposing it on the person using the services. According to SDCL 10–46–2.1, the measure of the use tax is "the value of the services at the time they are rendered."

At the administrative level, it was determined that Thermoset failed in its burden of proving that the Arthur Anderson cash flow statement was not used for its South Dakota facility. The circuit court reversed this, stating Thermoset did not use the accounting services in South Dakota; namely, the 1986 cash flow statement was based on a different product line, different manufacturing equipment, and a different labor structure than what later materialized in South Dakota in 1987. We disagree. Thermoset's transaction with Arthur Anderson is subject to tax under SDCL 10–46–2.1. Although some of Arthur Anderson's services may have become obsolete when the designs of various plates were changed, some of the machinery included in the study is still being used in South Dakota. Further, even if these plate designs are obsolete now, they were not obsolete at the time the services were rendered. Thermoset used these accounting services in South Dakota to conduct its business and is therefore subject to use tax on these services.

III. *Thermoset is liable for use tax on the cost of prototype molds designed and intended for use in South Dakota.*

■ At the administrative level, it was determined that Thermoset failed in its burden of proving that all of the prototypes did not come into the state or were not used in South Dakota. The circuit court reversed the agency, determining that the prototype molds ordered by Thermoset's organizers are not subject to South Dakota use tax. We disagree.

Thermoset is liable for use tax on the cost of the molds under SDCL 10–46–2. Three prototype molds were made, two of which were for an obsolete product, but the third was for a finished product Thermoset is now making. Because the molds were purchased for use in South Dakota, any exercise of the privilege of using, storing, and consuming the molds in South Dakota triggers imposition of the use tax.

IV. *Thermoset is not entitled to the exemption of SDCL 10–46–9 on poly pails.*

Department argues that the circuit court erroneously reversed the Secretary's determination that poly pails used by Thermoset are not exempt from use tax pursuant to SDCL 10–46–9. SDCL 10–46–9 provides:

The use in this state of tangible personal property including containers, labels and shipping case thereof which is intended shall, by means of fabrication, compounding or manufacture become a part of other tangible personal property intended to be sold ultimately at retail within or without the state of South Dakota, is hereby specifically exempted from the tax imposed by this chapter. The term tangible personal property shall be construed to include without limiting the meaning of said term, raw material and newspaper print.

■ Statutes exempting property taxation should be strictly construed in favor of the taxing power. *Application of Veith,* 261 N.W.2d 424 (S.D.1978). The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption. *Northwestern Pub. Serv. Co. v. Housing & Redev. Comm'n,* 320 N.W.2d 515 (S.D.1982).

This Court has interpreted SDCL 10–46–9 to require that material must be an integral or component part of the finished product before the exemption applies. *K-Mart Corp. v. South Dakota Dep't of Revenue,* 345 N.W.2d 55 (S.D.1984). This construction is consistent with the decisions of other courts which have construed exclusionary language substantially similar to

that found in SDCL 10–46–9. *See Nucor Steel v. Herrington,* 212 Neb. 310, 322 N.W.2d 647 (1982) (where the court distinguished steel processing cases, in which the property involved was an essential component which entered into the chemical process of making steel, from cases in which the taxed substance was only incidentally added to the final product rather than being an essential ingredient or component part of the finished product). *See also, Nucor Steel v. Leuenberger,* 448 N.W.2d 909 (Neb.1989) (concerning Nebraska sales and use tax and the exemptive requirement that the property enter and become an ingredient or component part of a finished product).

■ From the before-mentioned cases, the rule evolves that material which only accidentally or incidentally becomes incorporated into a finished product, and which is not an essential ingredient of the finished product, is subject to use tax. This rationale is grounded upon the recognition that such material is not an ingredient or component part of tangible personal property either manufactured, fabricated or compounded for ultimate sale at retail. For the production of the plates, there are three prime ingredients, calcium carbonate, polyester resin, and strand fiberglass. When these ingredients are mixed together, a new product is formed. Poly pails are buckets used to measure ingredients for the mixing operation, and are made out of the same material. However, the product does not call for poly pails. The fact that the poly pails are put into the product being manufactured does not change the true character of the final product. Thermoset has failed to establish that poly pails became essential ingredients or component parts of the finished product. Therefore, we conclude that the facts do not establish that the poly pails consumed in the process of plate making come within the purview of the exemption provided therein.

V. *Thermoset is liable for use tax on the rental of equipment used in its manufacturing process.* (also a Thermoset notice of review issue)

SDCL 10–46–2.2 states: "An excise tax is imposed upon the privilege of the use of rented tangible personal property in this state at the rate of four percent of the rental payments upon the property."

■ When Thermoset was set up in South Dakota and ready to manufacture its product, it did not have mixing equipment. Therefore, it entered into a three month extrusion equipment rental agreement with Bulk Mold Company. The parties entered into an agreement, in the form of a lease, as evidenced by testimony of Thermoset's general manager:

The equipment was leased for two reasons: .... One is it protected the owner of the equipment against liabilities that might incur in it being at somebody else's plant, and secondly, there, of course, was a dollar value because he wasn't going to leave the equipment at our plant for three months at no charge.

He also testified that:

[T]he regular rent on it would have been the $800 per month as stipulated in this lease with a minimum of three months, and had we continued on with it after three months, the rent would have—if there had been rent—would have continued at that rate.

The Secretary concluded that the extruder rent paid by Thermoset was a use-taxable item. Thermoset argues that the rent was actually payment for raw materials. We are of the opinion that the agreement provided for equipment lease; the invoice of payment characterizes the payment as extruder rent in the amount of $2,400. The provisions of the lease agreement between the parties also characterizes the transaction as rent. Therefore, use tax must be assessed on the rental of this equipment.

*Notice of Review*

*Thermoset is not entitled to the exemption of SDCL 10–46–9 on all materials which it consumes in the manufacturing process.*

The Secretary determined that the items used and consumed by Thermoset in its

manufacturing process, but which are not intended components of the final product, do not qualify for the exemption of SDCL 10–46–9. The circuit court generally agreed, however it found the poly pails to be intended components of the final product and subject to the exemption. Per our discourse on issue 4, we reversed the circuit court on the poly pails issue.

Using the same analysis employed under issue 4, items described as suction cups, brushes, blades, chips for deflasher, molds, belts, poly pails, gloves and magnetic tape are neither intended components nor ingredients of the finished product and are therefore not entitled to the exemption granted by SDCL 10–46–9. All the beforementioned materials only incidentally or accidentally become incorporated into the final product.

We reverse the circuit court in part and affirm it in part, thereby entirely affirming the Secretary's findings.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.