NATIONAL FOOD CORPORATION,
Appellee,

v.

The **AURORA COUNTY BOARD OF COMMISSIONERS** Acting as the Aurora County Board of Equalization, Appellant.

Nos. 18800, 18815.

Supreme Court of South Dakota.

Considered on Briefs April 27, 1995.

Decided Aug. 23, 1995.

John F. Cogley of Morgan, Theeler, Cogley & Petersen, Mitchell, for appellee.

Susan Steele, Aurora County State's Attorney, Plankinton, and Thomas H. Harmon of Tieszen Law Office, Pierre, for appellant.

SABERS, Justice.

County Board of Equalization assessed real property taxes on equipment of agricultural corporation operating large pullet-raising and egg-laying facilities. Corporation appealed to circuit court, which reversed the Board of Equalization. Aurora County appeals and we reverse.

## FACTS

National Food Corporation (National Food) owns a pullet-raising facility (East Farm) and an egg-laying and feed mill facility (West Farm) in Aurora County, South Dakota. The Director of Equalization assessed the value of the property in 1993 according to his own appraisal and an earlier one by an outside appraisal firm.

The 1993 real property tax assessment for the East Farm included a 30,000 gallon propane tank. The 1993 real property tax assessment for the West Farm included the following:

1. All machinery and equipment in the feed mill including a grain dryer, scalper, two load-out tanks located outside the building itself, a hammer mill, a roller mill, a corn auger, a distributor head and surge hopper and three motors of various sizes located in the head house above the main building. The items taxed at the feed mill also include a motor control center, several electrical panels, a weigh hopper and dump, load cells, a micromix, two two-ton mixers, an air compressor, a dust control system, various motors, a hydraulic system and 20 work tanks in the main building

2. Augers, conveyors and feed-handling equipment

3. An outside scale

4. A 20,000-gallon vertical tank

5. Grain dryer

6. Another scalper for finished feed

7. Three 5,000-bushel capacity hopper bins (wet tanks)

8. Two load-out tanks (overhead hopper bins) located over the scale.

National Food appealed to the circuit court, claiming the items were not taxable as real property and, even if they were taxable, the assessed values should be reduced for economic obsolescence.

The court found the work tanks and distributor head were an integral part of the building which could only be removed through the roof of the building at a cost of approximately $8,000.00. Therefore, the court found the work tanks and distributor head were real property. The court found the three hopper bins, the fat tank, and the two overhead tanks on the West Farm were permanently affixed to the land and taxable as real property. The court found the 30,000 gallon propane tank on the East Farm was affixed to the land and taxable as real property.

The court found the machinery and equipment in the main building of the feed mill and the header house were not constructed as "an integral part of or essential to the support of a building or structure" and concluded the remaining machinery and equipment used in the feed mill were personal property, including the scale, the grain dryer, and the scalper.

The court remanded to the Aurora County Board of Commissioners acting as the Aurora County Board of Equalization with directions to reassess the property. Aurora County appeals and we reverse.

**1. Whether the machinery and equipment are structures under SDCL 10–4–2 and taxable as real property?**

SDCL 10–4–2 provides in part:

Real property, for the purposes of ad valorem taxation, includes the land itself, . . . and improvements to the land, such as ditching, surfacing and leveling, and all rights and privileges thereto belonging[.] Real property also includes all buildings, *structures* and mobile homes, as defined in subdivision 32–3–1(8) which are permanently affixed by foundation to the land upon which they are located, including systems for the heating, air conditioning, ventilation, sanitation, lighting, and plumbing of such structures, buildings and mobile homes, and all rights and privileges thereto belonging, and trees.

. . . . .

*Id.* (emphasis added).

 "[T]he question of whether a statute imposes a tax under a given factual situation is a question of law[.]" *Thermoset Plastics, Inc. v. Dept. of Revenue,* 473 N.W.2d 136, 138 (S.D.1991). "[S]tatutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body." *Id.* (citation omitted). "Statutes exempting property [from] taxation should be strictly construed in favor of the taxing power." *Id.* at 139 (citation omitted). "The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption." *Id.* (citation omitted).

 If property is a structure, then it is taxable as real property. SDCL 10–4–2. "Structure" is defined as:

Any construction, or any production or piece of work artificially built up or composed of parts joined together in some definite manner. That which is built or constructed; an edifice or building of any kind.

A combination of materials to form a construction for occupancy, use or ornamentation whether installed on, above, or below the surface of a parcel of land.

*Black's Law Dictionary,* 1424 (6th ed. 1990). The property and equipment in question, including the scale, the grain dryer and the scalper, are "structures" as that term is commonly used.

SDCL 43–1–3(2) defines "real property" as "[t]hat which is affixed to the land." A "thing affixed to the land" is something "permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts, or screws." SDCL 43–33–1. In defining a "real property improvement" for purpose of the contractor's excise tax, we stated:

[S]ilos are placed upon farm land to promote the use for which the realty has been put. The construction of these silos onto a concrete slab with anchor bolts is taxable . . . as a realty improvement.

*Dakota Harvestore Systems, Inc. v. South Dakota Dept. of Revenue,* 331 N.W.2d 828, 830 (S.D.1983). In discussing whether equipment can be "realty," we stated:

[T]he equipment could be moved, but frequent movement was not contemplated unless replacement was necessary. In this sense, the installations were permanent. The permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose.

*Brink Elec. Const. v. Dept. of Revenue,* 472 N.W.2d 493, 499–500 (S.D.1991) (quoting *In the Matter of Tax Appeal of Logan and Associates,* 331 N.W.2d 281, 283 (S.D.1983)).

 The grain tanks, water tanks and propane tank are "structures" under SDCL 10–4–2. Also, the water tanks and propane tanks are part of the plumbing and heating systems of the structures even if the tanks themselves were not deemed "structures." SDCL 10–4–2. The tanks are attached to concrete slabs by bolts so they are part of the real property and taxable as such. *See* SDCL 43–33–1. The wet tanks, fat tank, grain dryer, and both scalpers are bolted to concrete slabs so they are also real property. *Id.; Brink,* 472 N.W.2d at 500.

Since we conclude that these items are taxable as real property as "structures," it is not necessary to this decision to reach the second part of SDCL 10–4–2. However, we do so for the benefit of the public, the bench

and the bar. Initially, we note that for items other than "buildings, structures, and mobile homes," the second part of SDCL 10–4–2 contains a three-part test for exclusion of items from taxation (as real property).

▮ The second part of SDCL 10–4–2 provides in part:

> ... Real property does not include items which pertain to the use of such structures, buildings and mobile homes, such as tools, implements, machinery or equipment used in the business, production, trade or manufacturing activity conducted thereon which [1] are not constructed as an integral part of *and* [2] are not essential for the support of such structures, buildings or mobile homes, *and* [3] which are removable without materially limiting or restricting the use of such structures, buildings or mobile homes, regardless of size, weight or method of attachment.

*Id.* (emphasis added). The items must pertain to the use of such structures and the parties stipulated to this fact. The conjunctive "and" indicates each part of the test must be satisfied for the exclusion to apply. *See Black Hills Novelty Co., Inc. v. South Dakota Commission on Gaming*, 520 N.W.2d 70, 74 (S.D.1994).

▮ First, the items must not be constructed as an integral part of such structure. The court found those items not taxable were not an integral part of any taxable structure. However, this finding is somewhat inconsistent with other findings as discussed herein.

Second, the items must not be essential for the support of such structure. The court found the nontaxable items were not essential for the support of any structure. This finding is also somewhat inconsistent with other findings as discussed herein.

Third, the items must be removable without materially limiting or restricting "the use" of such structure. SDCL 10–4–2. "The use" of such structure is the use intended by the owner. *Logan*, 331 N.W.2d at 282–83. Here, "the use" intended by the owner on the West Farm is an egg-laying and feed mill operation.

> Machinery normally is personal property and is not deemed a fixture except where it is installed in such manner that its removal will result in material injury to it or the realty, or where the building in which it is placed was specially designed to house it, or where there is other evidence that its installation was of a permanent nature.

*Id.* at 283 (citations omitted). The circuit court found the "facility is of a very modern design and is constructed and engineered in a very efficient manner for its purpose." The buildings which house these items have been "specially designed to house [them]." *Id.* Except as indicated, there was no finding that the equipment was not "integral" or not "essential for the support" of the structures.

National Food claims the West Farm building could be used for storage if the items were removed. The court found "the machinery and equipment could be reasonably and practically removed from the building or structure." However, the court failed to consider that removal would "materially limit[ ] or restrict[ ] the use of such structures." SDCL 10–4–2. The court erred as a matter of law in construing the statute in this manner.[1] *See Thermoset Plastics, Inc.*, 473 N.W.2d at 138.

---

1. We note that in construing a similar statute, the North Dakota Supreme Court adopted the opposite position. *Ladish Malting Co. v. Stutsman County*, 416 N.W.2d 31, 35 (N.D.1987). As the court noted:

> To construe the word 'use' as that particular use to which a taxpayer has employed its structures or buildings would not accommodate the legislative intent to exempt those items of property which fall into the questionable area between real and personal property ... If items are used directly in and solely for effectuating that particular purpose to which the taxpayer has employed its structures and buildings, the removal of the items would naturally, in most instances, restrict or limit that particular use ... We construe the statute in a less restrictive manner. Items which are removable without materially limiting or restricting that quality of a structure or building that makes it useful or suitable for any purpose constitutes a construction more conducive to the legislative intent expressed.

> Where physical or economic considerations so negate movement as a matter of practicabil-

**2. Whether an economic obsolescence factor was established in assessing the value of the property?**

■ The Director considered three types of depreciation in assessing the market value of the property: physical deterioration, the wearing out of structures; functional obsolescence, the loss of value due to change in style or design; and economic obsolescence, the loss of value from outside causes, also known as locational obsolescence. *See Rau v. Fritz*, 81 S.D. 311, 315, 134 N.W.2d 773, 775 (1965) (citation omitted) (overruled on other grounds by *Yadco, Inc. v. Yankton Co.*, 89 S.D. 651, 659, 237 N.W.2d 665, 670 (1975)) (economic obsolescence is "loss of value brought about by conditions in the neighborhood of a property causing loss of business"). The Director stated that since the facility is relatively modern, no functional obsolescence was required. The Director stated that neither the East nor West Farm was entitled to any economic obsolescence. Reduction of taxes for economic obsolescence is not automatic and must be established in the record by the taxpayer. *See Knodel v. Bd. of Cty. Com'rs, etc.*, 269 N.W.2d 386, 389 (S.D.1978) (citation omitted).

Family farm structures and grain elevators in the area were given an economic obsolescence factor of 30 percent. The valuation for East Farm and West Farm did not include a reduction for economic obsolescence. National Food's property was classified commercial agricultural property. The other facility in Aurora County classified as commercial agricultural property was not given economic obsolescence.

The court concluded that the 20 work tanks, the 30,000 gallon propane tank, the two 200,000 gallon water tanks, three 85,400 bushel grain bins, three hopper bins or wet tanks, the fat tank, and the two overhead tanks were entitled to an economic obsolescence factor of 30 percent. The court concluded the other items taxable as real property were not entitled to an economic obsolescence factor.

■ South Dakota Constitution, Art. XI, Section 2 requires "[t]axes shall be uniform on all property of the same class, ... and the valuation of property for taxation purposes shall never exceed the actual value thereof." National Food "bear[s] the burden of overcoming the presumption that the director of equalization's valuation was correct." *Knodel*, 269 N.W.2d at 389; *see Hutchinson County v. Fischer*, 393 N.W.2d 778, 782 (S.D. 1986) (citation omitted) (the presumption is that tax officials will not act unfairly or arbitrarily). "They must produce sufficient evidence to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class or was discriminatory." *Knodel*, 269 N.W.2d at 389 (citation omitted).

> There being no findings the director of equalization did not substantially comply with statutory mandates; that the land was assessed in excess of its true and full value; lacked uniformity; was discriminatory or that the tax levied was unjust or inequitable; the court could not reach the conclusion as a matter of law that [an economic obsolescence factor should have been used].

*Id.* at 390 (citation omitted).

The court made no findings that the classification scheme was discriminatory or not uniform. The court found "the same considerations would apply to the improvements and structures on the East and West Farms as apply to the other agricultural and eleva-

---

ity, the property should be found to be real property.

*Id.* at 35 (citation omitted).

It appears North Dakota sought a balance between a "special use" test and an economic feasibility test because the North Dakota Tax Commissioner established guidelines for personal property. *Id.* at 36. No similar guidelines exist in South Dakota.

North Dakota's legislative intent was clear that most property was to be considered personal; however, no such legislative intent exists in South Dakota.

Here, the circuit court appears to have misconstrued the economic consideration on the use of the facility. Almost no evidence was presented beyond National Food's president testifying that other uses were possible if all the items were removed. The court seemed to be focused on the cost of the removal process itself rather than the economic consequences of the change in use. The court apparently ignored the third part of the SDCL 10-4-2 test for exclusion.

tor improvements insofar as economic obsolescence is concerned." We have stated "[n]oncompliance with mandatory statutes and excessive valuations are not sufficient findings to grant a taxpayer relief." *Id.* at 390. "Findings must specifically show that if there was noncompliance with statutory mandates, the tax levied was unjust and inequitable; if excessive, the value is in excess of true and full value, lacked uniformity in the same class or was discriminatory." *Id.*

 Unrefuted testimony indicated Aurora County is within statutory mandates on sales assessment ratio range. Also, unrefuted testimony indicated economic obsolescence is based on market value. The Director testified:

> [B]ecause of environmental factors, and labor—available labor, available land, available feed stuffs, and other reasons, that this was possibly, quite probably, the best location or a location like this probably is the best location that National Food could build on.

The court found "[a] deliberate and careful decision was made by National Food Corporation to locate and build its facility where it did, and its facility is of a very modern design and is constructed and engineered in a very efficient manner for its purpose." The circuit court found National Food's ap-

praiser stated an economic obsolescence factor of 9.5 percent should be applied to the property.[2] However, the circuit court found "the testimony was based on the sale of only one other similar operation which was not an operating or ongoing business and which was apparently valued and sold under distress." Therefore, the court's findings simply do not support its conclusions. *Knodel,* 269 N.W.2d at 390.

National Food has failed to show a lack of uniformity in taxation or that discrimination occurred. *Id.* at 389. Therefore, as a matter of law, the trial court erred in ordering a reduction in the assessment for economic obsolescence. *Id.*

We have considered County's other issues and determine them to be without merit. We reverse.

MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

---

**2.** It is interesting to note that the final value placed on the property by National Food's appraiser exceeded the final value of the Director's appraisal even though National Food's appraiser included an economic obsolescence factor of 9.5 percent.