1996 SD 110

WHARF RESOURCES (USA) INC., and Wharf Resources, a Montana General Partnership, Plaintiffs and Appellants,

v.

Marie FARRIER, County Treasurer of Lawrence County, South Dakota, Defendant,

and

Lead–Deadwood School District #40–1, Intervenor and Appellant.

Nos. 19050, 19054.

Supreme Court of South Dakota.

Argued Nov. 28, 1995.

Decided Aug. 28, 1996.

Marvin D. Truhe and Linden R. Evans, Marvin D. Truhe Law Offices, Rapid City, for plaintiffs and appellants.

Thomas E. Carr and Richard A. Pluimer of Carr & Pluimer, P.C., Belle Fourche, for intervenor and appellant.

John H. Fitzgerald, Lawrence County State's Atty., Deadwood, for defendant.

VON WALD, Circuit Judge.

[¶ 1] This appeal consolidates two cases dealing with alleged errors in the assessment of and the taxes levied against properties owned by Wharf Resources (Wharf) from 1989 to 1992. For each year in question, Wharf paid the taxes levied by Lawrence County and challenged that levy. The Lead–Deadwood School District (school district), as beneficiary of the majority of those tax dollars, intervened in the original actions and now appeals the refund ordered by the circuit court for years 1989, 1991, and 1992. We affirm the trial court's ruling as to the refunds awarded by the court for these years.

[¶ 2] Wharf appeals the circuit court's dismissal of its claim for refund for tax year 1990. We remand for rehearing as to 1990 taxes. In addition, Wharf appeals the manner in which interest was calculated on the ordered refunds. We remand for recalculation of interest.

## BACKGROUND

[¶ 3] Wharf Resources is the owner of certain properties located in Lawrence County, South Dakota, which include the "Annie Creek Mine," an active surface gold mine. Wharf was issued assessments and tax notices each year for the various properties which make up and surround that mine. For

each of the years included in this appeal, Wharf paid its taxes under protest and filed suit against Lawrence County for refund. The Lead–Deadwood School District intervened in each action.[1]

[¶ 4] Although there are some issues common to each tax year, a description of each year's proceedings is necessary to clarify the distinct issues presented by each assessment and tax levy. This Court shall provide separate analysis for each year and shall address common issues as they arise.

## STANDARD OF REVIEW

[¶ 5] The proper scope of review of a trial court's decision in a trial de novo of a tax assessment is whether the decision was clearly erroneous. *Sabow v. Pennington County*, 500 N.W.2d 257, 258 (S.D.1993). In making that determination, "the question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has occurred." *Hendriks v. Anderson*, 522 N.W.2d 499 (S.D.1994)(quoting *Yadco, Inc. v. Yankton Cnty.*, 89 S.D. 651, 237 N.W.2d 665, 670, (1975)). Statutory interpretation, including whether a statute would impose a tax under a given factual situation, is a question of law and is therefore fully reviewable by this Court. *Matter of Thermoset Plastics, Inc.*, 473 N.W.2d 136, 138 (S.D.1991).

## DECISION

[¶ 6] *1989 Taxes*

### Facts

[¶ 7] Certain legislation limiting property taxes was adopted by the South Dakota legislature in 1989. *See* SDCL, Ch. 10–12B. These "tax freeze" statutes acted to limit the taxes paid on property assessed in 1989 and 1990 to the total amount of property taxes levied in 1988. However, the freeze did allow for the assessment of and levying of taxes on "any additions, improvements, or change of use, either actual or legal, of prop-

---

1. Lawrence County settled with Wharf prior to     this appeal.

erty which were not assessed in 1988." SDCL 10–12B–4.

[¶ 8] In 1990, the county director of equalization issued some 240 tax notices indicating the taxes due on each individual parcel owned by Wharf. The notices reflected the same tax as in prior years except as to twenty parcels. The increases on sixteen of those parcels were explained as stemming from reassessment of additions, improvements, or changes in use.[2] Wharf did not appeal the assessment increases to the Lawrence County Board of Equalization. Instead, it applied for abatement to the Lawrence County Commissioners, which denied the application. Wharf did not appeal the commission's decision, but instead paid the assessed taxes under protest and brought an action under SDCL 10–27–2 for a refund.

[¶ 9] In that action, the trial court found the 1989 increase in taxes ($395,959.27) was not due to inclusion of additions, improvements or changes in use. Instead, the trial court found the increase in taxes was due to an overall increase in the assessed valuation of the property, which was prohibited by the tax freeze statutes. However, the trial court also found that Wharf had made improvements and other investments totalling $5,968,812 which constituted taxable additions or improvements that were not exempt under the tax freeze statutes. The court found the $5,968,812 value for additions and improvements resulted in an additional tax liability of $128,150.38 over Wharf's 1988 taxes. Because Wharf had already overpaid $224,202.38 on its 1988 taxes, the court found Wharf was entitled to a refund of $96,051.99 plus interest.

[¶ 10] The School District appeals on the following bases:

I. **Wharf is precluded from attacking the 1989 assessment because it failed to appeal the assessment to the County Board of Equalization and beyond.**

II. **Even if Wharf has an additional remedy arising out of the 1989 assessment, Wharf elected its remedies by proceeding under SDCL 10–18. The denial of the abatement application of Wharf became a final determination, which has not been appealed, precluding additional relief under SDCL 10–27.**

III. **The trial court failed to properly value and include all improvements made by Wharf during 1988.**

### Decision

[¶ 11] In 1990, SDCL 10–27–2 provided:

Any person against whom any tax is levied or who may be required to pay the same, who pays the same under protest to the treasurer authorized to collect the same, giving notice at the time of payment of the reasons for such protest may, at any time within thirty days thereafter, commence an action against such treasurer for the recovery thereof in any court of competent jurisdiction, and if the court determines that the same was wrongfully collected, in whole or in part, for *any reason going to the merits of the tax,* it shall enter judgment accordingly, and such judgment shall be paid in preference to any other claim against the county, upon the final determination of the action; and the pro rata share of the money so refunded shall be charged to the state and each taxing district which may have received any part of such tax. The right of appeal shall exist for both parties as in other civil actions.[3] (emphasis added).

The school district contends that Wharf was precluded from bringing suit under this statute because it failed to appeal the assessment to the county board of equalization.

[¶ 12] It is well settled law in South Dakota that a party who fails to complain to his county board of equalization as to *excessive* valuation may not question the validity of the valuation assessed to his property via SDCL 10–27–2 (formerly RC 1919, § 6826).

---

2. The increases on the other four parcels were attributed to bond requirements. Wharf did not challenge these increases.

3. SDCL 10–27–2 has since been modified. Those modifications do not affect these proceedings.

*Yusten v. Morrison,* 78 S.D. 426, 103 N.W.2d 653 (S.D.1960); *Holbrook v. Gallagher,* 56 S.D. 54, 227 N.W. 461 (1929). However, where a party alleges the assessment was *illegal and void,* and not a mere error in valuation, he is not required to challenge that assessment with the county board of equalization, but may apply directly for judicial relief. *Yusten v. Morrison,* 103 N.W.2d at 655 (stating "[i]t may be conceded that where an attempted assessment is a nullity because the property is tax exempt or outside the jurisdiction there is no question of valuation which must be presented to the local board of equalization for correction as a condition for judicial relief").

[¶ 13] Wharf's 1990 complaint was based on the premise that the county's tax was levied in violation of SDCL 10–12B, the tax freeze chapter. Wharf challenged the *legality* of the tax levied, not the assessed value of its property. Wharf alleged the county treasurer improperly levied taxes in 1990, in violation of the tax freeze statutes, and therefore those improperly levied taxes are illegal. Wharf is entitled to apply for and receive a refund on the basis of illegality under SDCL 10–27, and its failure to appeal to the county board of equalization prior to commencing its circuit court action does not serve to preclude the action for refund under SDCL 10–27.

[¶ 14] In the alternative, the school district argues Wharf chose its remedy when it challenged the tax under SDCL 10–18, providing for abatement, and is therefore precluded from challenging the tax under alternative grounds. In support of that position, the school district points to *Dakota Lodge No. 1 I.O.O.F. v. Yankton County,* 56 S.D. 234, 228 N.W. 238 (S.D.1929), which held an original action to recover an illegal tax was not maintainable where the plaintiff had not appealed from an abatement decision on the same issues.

[¶ 15] In *Dakota Lodge, supra,* the question was whether the appellant was a charitable society and thus exempt from taxation. The court found it was not and ruled that because appellants case fell within one of the six categories identified specifically in the code (now SDCL 10–18–1), and the appellant

sought abatement under that section, it was precluded from also seeking recovery and refund under RC 1919 § 8626 (now SDCL 10–27–2). However, here Wharf's challenge does not fall within any of the six subsections of SDCL 10–18–1, as the school district successfully argued at the county equalization board level, and thus Wharf's exclusive remedy is under SDCL 10–27–2. *Security National Bank v. Twinde,* 52 S.D. 352, 217 N.W. 542 (1928).

[¶ 16] Last, the school district contends the trial court erred in failing to properly value and include all improvements made by Wharf during 1988. In reviewing such factual determinations on appeal, this Court defers to the trial court, and will only disturb its findings where the trial court's determination is clearly erroneous. *Sabow v. Pennington County, supra.*

[¶ 17] The trial court found certain expenditures did not constitute taxable real property additions or improvements and excluded them. The expenditures excluded from taxation included such items as leased trucks, loaders, shovels, office furniture, laser printers, and computers. The school district's argument that such items should be included in real property taxation as improvements on the basis that each somehow benefitted the real property is erroneous. Under such logic, most personal property could be considered taxable improvements to real property. It is this Court's ruling that the trial court's findings of fact as to what constituted "improvements" and its value of those improvements were supported by the evidence. The trial court was correct in permitting a refund of excess taxes paid Wharf for tax year 1989.

[¶ 18] *1990 Taxes*

Facts

[¶ 19] Wharf was issued some 230 individual notices of assessment for its Lawrence County holdings for tax year 1990. The permitted properties were valued at $27.7 million (excluding crushers, conveyers, and other personal property), and the non-permitted properties were valued at $430,590. Those amounts were apportioned among the

individual holdings, and separate notices were issued reflecting that apportionment.

[¶ 20] Wharf appealed the assessment of each of its permitted and nonpermitted holdings to the Lawrence County and South Dakota State Boards of Equalization.[4] In appealing to those boards, Wharf described its property by reference to the individual notices and stated its grievance in terms of the total assessment figure. Both boards found the valuations were proper and upheld the taxes assessed on those properties.

[¶ 21] Wharf then appealed to the circuit court for relief from that judgment. In that appeal, Wharf did not challenge each and every assessment, but instead limited its appeal to the valuations of nine individual permitted parcels. Wharf claimed the true and fair value of those nine parcels, assigned a value of $20,358,610 by the county assessor, was actually $7,139,607.

[¶ 22] Prior to trial, the school district and the county challenged Wharf's ability to appeal only a selected portion of assessments which had been upheld in its entirety by both the county and state boards of equalization. The trial court allowed Wharf to proceed, but after trial reversed its decision and dismissed Wharf's appeal. Wharf questions the circuit court's dismissal of its appeal and contends it was entitled to selectively appeal only those nine assessments with which it disagreed.

### Decision

■ [¶ 23] SDCL 10–11–43 allows any interested party to appeal from a decision of the state board of equalization to the circuit court of the taxing county upon the same terms as other appeals may be taken from county equalization board decisions. SDCL 10–11–45 further provides "all decisions of such boards of equalization affecting any par-

ty or parties appellant, may be included in one appeal [to the circuit court]."

[¶ 24] Wharf was issued over two hundred tax assessment notices. It had a right to take those notices at face value, and could contest any or all such notices to the county and state boards. Wharf initially contested all the notices to the county and state boards of equalization. That election in no way affected its right to contest only some of those decisions of those boards on appeal to circuit court. In the same way that an attorney is free to appeal only those objections made at trial he or she deems most meritorious, Wharf was entitled to appeal only those decisions it found particularly egregious and with which it continued to disagree.[5]

[¶ 25] The trial court was in error in dismissing that appeal, and tax year 1990 is remanded to the trial court for rehearing. In conducting that hearing, the trial court may utilize the approach it took on the 1991 taxes, and value the "entire ore body." [6]

### [¶ 26] *1991 Taxes*

#### Facts

[¶ 27] The county again issued separate tax notices on each of Wharf's holdings in 1991. Wharf appealed the assessed value of only six of those holdings to the county board of equalization (county board). The school district did not challenge the assessment of other Wharf properties at those proceedings. The county board denied Wharf's appeal, and Wharf appealed to the circuit court as to the six assessments. During the circuit court proceedings, the school district raised a challenge to the valuation of other parcels; however the trial court rejected that challenge because the school district had failed to challenge the assessments at the county board level.

---

4. The County opted out of the tax freeze for tax year 1990; therefore, Wharf's challenge was based on whether the assessment of the property were excessive, not the legality of the assessments themselves.

5. No action taken by Wharf (in so appealing) served to mislead any party; therefore the doctrine of estoppel will not act to preclude Wharf's appeal. *See, e.g., St. Paul Fire and Marine Ins. Co. v. Kaarup*, 420 N.W.2d 364 (S.D.1988).

6. The trial court's valuation methodology is explained in the factual breakdown of tax year 1991. This Court's ruling should not be construed as an endorsement of the methodology utilized by the trial court. However, neither Wharf nor the school district have attacked that methodology on appeal, and have therefore consented to it.

[¶ 28] Because the county assessor did not personally view the property and formed no independent judgment concerning the value of Wharf's property, the circuit court held the assessments made by the county assessor were not entitled to a presumption of correctness. Further the court found those assessments were erroneous because the party who appraised them for the county did not attempt to distinguish between real and personal property in making his valuation.

[¶ 29] The court then made its own determination of the true value of the ore reserves on a per-ounce-of-recoverable-gold basis. In applying that calculation to the property in question, the court expanded its revaluation beyond the six parcels appealed by Wharf, applied it's calculations to the twenty-four permitted parcels, and determined those twenty-four parcels had been overassessed by $3,535,948.24.[7] On that basis, the court ordered a refund of $83,519 plus interest.

[¶ 30] The school district appeals on the following bases:

I. **The trial court erred in permitting Wharf to appeal six isolated claims where the mine had been valued and assessed as a single mine unit.**

II. **The county was entitled to the presumption that its assessment of the whole mine property was correct. No evidence was introduced of any kind to overcome the presumption as to the value of the mine.**

III. **The trial court erred in attempting to value either individual claims or the "ore body" without determining the mine, as a whole, was over-assessed.[8]**

### Decision

[¶ 31] In most cases, the county director of equalization's valuation of the property is presumed to be correct and the appellant bears the burden of overcoming that presumption. *Hutchinson County v. Fischer*, 393 N.W.2d 778 (S.D.1986). That presumption exists even where the county director did not actually view the property until after appeal to the county board. *Mortenson v. County of Stanley*, 303 N.W.2d 107 (S.D.1981). However, where the director merely accepts the valuation given him by others without exercising independent judgment, no such presumption exists. *Id.*

[¶ 32] In this case, the trial court held the assessments of the county director of equalization were not entitled to a presumption of correctness. This holding was based on its findings of fact that the director of equalization had not seen the property nor exercised any independent judgment as to its worth, but had simply accepted the lump-sum valuation of an outside party and arbitrarily apportioned that assessment among Wharf's holdings according to that outside party's direction. These findings of fact are supported by the evidence. The trial court did not err as a matter of law in refusing to apply a presumption of correctness to the county director's assessment.

[¶ 33] The school district also contends the trial court could not grant relief for individual parcels where the value of the whole was not challenged. This contention is based on the premise that Wharf's holdings were originally valued as one unit, and not as individual properties. (In 1991, as in past years, Wharf's holdings were divided in over two hundred parcels and separate notices of assessment were sent. In 1992, the entire mine was assessed as one parcel.)

[¶ 34] While this Court concedes that Wharf could not appeal some portion of an assessment of a single unit, no such appeal was attempted in this case. Wharf did not

---

7. The court noted that the experts were in agreement that ore bodies are considered as integrated masses, and so it would be impossible to determine the fair market value of an ore body without considering the ore body as a whole. Therefore, the trial court determined it was impossible to value only the six parcels appealed, but it was possible to determine the value of the entire ore body, which it did. It then applied it valuation technique to all twenty-four parcels, and not just to the six parcels whose valuations were appealed.

8. The school district also alleges the trial court erred in not treating 2,600 acres of land outside the mine permit boundaries as having been omitted from assessment and taxation. This Court finds that contention to be without merit.

receive just one single assessment of its properties in 1991; it received over two hundred. As such, it was entitled to appeal any one or more of those notices it disagreed with.

[¶ 35] It should be noted this Court finds the methodology utilized by the trial court in implementing its formulas less than ideal. However, since neither party has questioned that methodology, and there was adequate factual basis in the record to support it, the parties are deemed to have consented to it. The decision of the trial court is affirmed as to the refund awarded for tax year 1991.

[¶ 36] *1992 Taxes.*

## Facts

[¶ 37] For tax year 1992, the director of equalization combined all of Wharf's properties into a single taxable unit and a single assessment notice was issued to Wharf. The director of equalization made deductions from the county's total appraisal for certain personal property included by the county's expert appraiser. The county assessed Wharf's property at $15,940,013. Both Wharf and the school district appealed this assessment to the county board, which approved it without change. Both parties then appealed to the circuit court.

[¶ 38] The circuit court found the reductions made by the director of equalization from the county's expert's appraisal constituted a reduction for rolling stock and personal property and upheld those reductions. The court also held the county assessor's inclusion of the value of crushers and conveyers was improper in that those items constituted personal property. On that basis, the court further reduced the final assessment by some $4.5 million, and ordered a refund of $5,919.81 plus interest.

[¶ 39] The school district appeals on the following bases:

I. **Machinery, equipment, tools and similar property used in working or developing a mine are fixtures subject to taxation as real property**

pursuant to SDCL 10-4-2 and SDCL 43-1-5.

II. **The trial court erred in permitting Wharf's crushers and conveyers to be treated as personal property, not subject to tax as part of the "mine".**

## Decision

[¶ 40] In alleging the trial court was incorrect in exempting certain machinery, equipment and tools from taxation, the school district points to SDCL 43-1-5, which states, "[s]luice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine are to be deemed affixed to the mine" and to SDCL 10-6-35, which states, in pertinent part, "[i]n valuing any real property upon which there is a coal or other mine ... the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair voluntary sale for cash." While it would appear these two statutes, when read together, would have the effect of mandating the inclusion of the machinery and equipment used at the mine in the value of the mine, two general principles of statutory construction lead this Court to believe that conclusion is in error:

[¶ 41] 1) Statutes imposing taxes are to be strictly construed against the taxing body, and any doubt about whether an item of property is taxable is to be resolved in favor of the taxpayer. *National Food Corp. v. Aurora County Bd. of Com'rs*, 537 N.W.2d 564, 567 (S.D.1995). The obligation to pay taxes is purely statutory, and taxes can only be levied, assessed and collected in the method provided by express statute. *County of Spink v. Heinold Hog Market, Inc.*, 299 N.W.2d 811, 812 (S.D.1980). Thus, Wharf could properly be taxed only on its property expressly made taxable by statute.

[¶ 42] 2) In matters of statutory interpretation, statutes of specific application take precedence over statutes of general application. *U.S. Lumber v. Fisher*, 523 N.W.2d 87 (S.D.1994). SDCL 10-4-2 and 10-6-35 are statutes of specific application.[9]

9. SDCL 10-4-2 defines real property to include mines, minerals and quarries under the land,

stating in pertinent part:

SDCL 43–1–5 is a statute of general application, intended to aid in determining which of those items commonly associated with a mine would be deemed appurtenant to the land. There is no corresponding definition of "mine" contained in the South Dakota taxation statutes found under SDCL 10–4–2 and 10–6–35.

[¶ 43] If the legislature intended such equipment to be included in the statutes regarding the taxation of mines, it could have expressed that intention in the statutes. It did not do so.[10] Strict construction against the taxing body precludes this Court from adding such wording. The trial court was correct in exempting such property from the 1992 assessment.

[¶ 44] The school district also questions the trial court's determination that certain items of mining equipment were personal property and exempt from taxation. Again, it is reiterated that the question facing the appellate court is not whether it would make the same determination made by the trial court, but whether the trial court's decision was clearly erroneous. *Hendriks v. Anderson, supra.*

[¶ 45] The trial court found that it was ·not Wharf's intent that the equipment in question be a permanent improvement to the property. It further found much of the equipment was freely moved from place to place on the property to accommodate its use, and that any bolts or other attachments to the ground, including concrete and/or wooden blocks, were in place not to affix the items to the property, but to reduce vibration and to maintain balance during the operation of that equipment. The trial court's findings

of fact as to the nature and purpose of this equipment are supported by the record. Although made without benefit of our recent ruling in *National Food Corp. v. Aurora County Bd. of Comm'rs, supra,* the result reached by the trial court is within the parameters set by that decision. Therefore, the trial court is affirmed as to its refund on 1992 taxes.

### Interest on Refunds

[¶ 46] For each year in question, the trial court ordered interest be paid on each refund as of the date Wharf paid the· full amount of the challenged tax—*e.g.* as of November 1, when its second-half tax payment came due. Wharf appeals, asserting interest is due as of May 1 of each year, the date the first installment was due and payable. When interest commences on a tax refund, as well as the rate of interest to be applied, constitutes a question of law, and so is reviewed de novo by this Court.

[¶ 47] Interest is awarded on the basis that˛ a party who retains money which ought to be paid to another should pay for the use of that money. *See, e.g., Johnson v. Skelly Oil Co.,* 359 N.W.2d 130 (S.D.1984). Pursuant to statute, Wharf paid one-half of the taxes assessed to it by May 1 each year and the other half by November 1 of each of the years in question.[11] Wharf was thus denied, and the school district enjoyed, the use of one-half of Wharf's annual overpayment as of May 1 of each year in question. Interest is due Wharf and shall be determined on one-half of the appropriate refund as of May 1 of each year, and shall accrue on the other half as of November 1 of each year.

---

Real property, for the purposes of taxation, shall be construed to include the land itself ... and all buildings, structures ... and improvements, including systems for heating, air conditioning, ventilation, salitations, lighting, and plumbing of such structures and buildings, and all rights and privileges thereto belonging or in anywise appertaining, trees or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in anywise appertaining, *and all mines, minerals, and quarries in and under the same.*

10. This Court takes note that the legislature has since amended SDCL 10–4–2 to specifically ex-

clude the type of equipment and machinery described in SDCL 43–1–5 from real property taxation.

11. SDCL 10–21–23 provides:

one-half of assessed taxes become delinquent on May first and the other half become delinquent on November first of the year. The taxpayer may pay his taxes in two portions, one on or before April thirtieth and one on or before October thirty-first. If the taxpayer fails to pay the tax before the delinquency date, then interest is to be calculated from the date of delinquency.

[¶ 48] This Court orders remand to the trial court for calculation of the appropriate interest due on the refunds. In figuring the amount of interest due, the trial court is to apply SDCL 10–18–17 (limiting interest on tax refunds to four percent) only as of the date that statute was enacted. The applicable rate of interest for all periods prior to July 1, 1994 is to be set by reference to SDCL 21–1–13.1 and SDCL 54–3–5.1 as they existed at that time.

[¶ 49] Under the foregoing analysis, we affirm in part, reverse in part, and remand to the trial court for rehearing consistent with this opinion.

[¶ 50] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 51] SABERS, J., concurs in part and dissents in part.

[¶ 52] VON WALD, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (concurring in part, dissenting in part).

[¶ 53] I concur in all respects except that I dissent with regard to the 1992 taxes.

[¶ 54] The designation of machinery, equipment, and tools as real property for taxation purposes is dictated by statute; therefore, the trial court erred when it classified Wharf's crushers and conveyers as personal property not subject to taxation as part of the mining operation.

[¶ 55] On the date that Wharf's 1992 tax was assessed, SDCL 10–4–2 [12] provided that, for purposes of taxation, real property "shall be construed to include ... all buildings, structures ... and improvements ... trees or other fixtures of whatsoever kind thereon ... and all mines, minerals, quarries in and

under the same." Furthermore, SDCL 43–1–5 provides that "[s]luice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and *all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine.*" (Emphasis added). Finally, SDCL 10–6–35 provides, in relevant part, "[i]n valuing any real property upon which there is a coal or other mine ... the same shall be valued at such a price as such property, including the mine or quarry, would sell at a fair voluntary sale for cash."

[¶ 56] There can be no doubt that the Legislature intended the machinery and tools employed in a mining operation to be considered fixtures to the land. *See* SDCL 43–1–5. The majority states that statute is only "intended to aid in determining [what is appurtenant to a mine]." *See supra* at ¶ 49. Surely the use of such specific language was intended to be definitive and not merely helpful. The majority also points to the absence of a definition for "mine" in the South Dakota Code, as if the inclusion of such would spell an end to the debate. Webster's Dictionary defines "mine" in part as follows: "[A] pit or excavation in the earth from which mineral substances ... are taken by digging or by some other method of extraction; such a pit or excavation *together with the land, buildings, and machinery belonging to it.*" *Webster's New Int'l Dictionary* 1437 (3d ed. 1967) (emphasis added).

[¶ 57] Although the majority summarily dismisses SDCL 43–1–5 as a statute of "general" application, this court has previously looked to Title 43 for guidance in determining whether certain items qualify as real property. *See, e.g., National Food Corp. v. Aurora Cty. Bd. of Com'rs,* 537 N.W.2d 564 (S.D.1995). In that case, we relied in part on

---

12. On January 1, 1992, SDCL 10–4–2 provided, in its entirety:

Real property, for the purposes of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all buildings, structures, mobile homes as they are defined in subdivision (6) of § 34–34A–1 which are permanently affixed by foundation to the land upon which they are located, and improvements, including systems for the heating, air conditioning, ventilation, sanitation, lighting, and plumbing of such structures and

buildings, and all rights and privileges thereto belonging or in anywise appertaining, trees or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in anywise appertaining, and all mines, minerals, quarries in and under the same.

Although a 1992 revision of SDCL 10–4–2 deleted reference to the term "fixtures," that change is immaterial to this case because it went into effect July 1, 1992 and Wharf's tax was assessed January 1, 1992.

Title 43 to determine that tanks storing grain, water, and propane were taxable real property. *Id.* at 566 (citing SDCL 43–1–3(2) & 43–33–1).

[¶ 58] The trial court concluded Wharf's crushers and conveyers were personal property, not fixtures. If property is a fixture, it is taxable as real property under the pre-1992 version of SDCL 10–4–2. In determining whether an article is a fixture, this court considers the aforementioned statutes, as well as the following factors:

> (1) Its annexation to the realty; either actual or constructive; (2) its adaptability to the use and purpose for which the realty is used; and (3) the intention of the party making the annexation. The intention of the party with regard to making the article a permanent accession to the realty is the controlling criterion. The other tests derive their chief value as evidence of such intention. Intention is deduced from the relation of the parties and the circumstances of a particular case.

*In re Tax Appeal of Logan,* 331 N.W.2d 281, 282–83 (S.D.1983) (citations omitted). The trial court found that Wharf did not intend for the equipment to become a permanent improvement to the property; however, that determination was based in part on the fact that Wharf intended to "remove those items *at the end of the mine life* as required not only by Wharf's final mine reclamation plan, but also by South Dakota law" (emphasis added) (citation omitted). In light of previous statements by this court, this finding is inconsistent with the conclusion that Wharf did not intend to make permanent improvements:

> The permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, *until the purpose to which the realty is devoted is accomplished* or until

the item is superseded by another item more suitable for the purpose.

*Brink Elec. Constr. v. Department of Revenue,* 472 N.W.2d 493, 500 (S.D.1991). Because Wharf's intent is consistent with our definition of "permanence" as relates to fixtures, these mining tools and machinery should have been taxed as real property.[13]

---

13. The issue surrounding the 1992 tax assessment has actually been a non-issue for some time; in a 1917 opinion by the South Dakota Attorney General, generated in response to a request to interpret the exact same language as that which appears today in SDCL 43–1–5, the conclusion was as follows:

> [M]ill tools and machinery used in working or developing a mine are deemed to be affixed to the mine and it is the opinion of this office that [such property] should have been taxed as real property. It therefore follows that the assessment of this property as personal property was illegal and void[.]

1917–18 Op. Att'y Gen. 68, 69 (1917).