2003 SD 104

**COOPERATIVE AGRONOMY SERVICES, A cooperative association, Plaintiff and Appellee,**

v.

**SOUTH DAKOTA DEPARTMENT OF REVENUE, Defendant and Appellant.**

No. 22264.

Supreme Court of South Dakota.

Considered on Briefs Aug. 26, 2002.

Decided Aug. 20, 2003.

Carlyle E. Richards of Richards & Oliver, Aberdeen, South Dakota, Attorneys for plaintiff and appellee.

Harvey M. Crow, Jr., Department of Revenue, Rapid City, South Dakota, Attorney for defendant and appellant.

ZINTER, Justice.

[¶ 1.] The South Dakota Department of Revenue (Department) assessed sales tax on a fertilizer storage service Cooperative Agronomy Services (CAS) provided other cooperatives. The circuit court reversed the assessment on appeal, and we reverse.

### FACTS

[¶ 2.] CAS is a cooperative association located in Groton, South Dakota. CAS was incorporated by approximately twelve North and South Dakota locally owned cooperatives. According to the articles of incorporation, CAS' purpose was to reduce "the member cooperatives' costs through joint action in purchasing and distributing supplies such as fertilizer, chemicals and other merchandise and personal property." To facilitate that purpose, CAS owns and operates a warehouse, railroad siding, and related personal property. It also has its own employees and payroll.

[¶ 3.] The business activity at issue is the fertilizer storage CAS provides for its member cooperatives. CAS does not purchase, own, sell, or deliver the fertilizer, and it is not involved in billing for the fertilizer it stores. CAS merely operates a warehouse for the other cooperatives' fertilizer. Each member cooperative purchases fertilizer and has it delivered to

CAS' storage facility. Upon delivery, CAS unloads and stores the fertilizer. When a member cooperative subsequently sells fertilizer to its farm customer, the member cooperative makes arrangements to have the fertilizer transported from CAS' warehouse to the farm customer. The transportation occurs either through the use of the member cooperatives' own trucks or through other commercial truckers.

[¶ 4.] To pay for this storage service, the member cooperatives pay CAS a "$6 per ton through-put fee." In December 1998, at the insistence of the Department, CAS began paying sales tax on the $6 fee. In October 2000, CAS applied for a refund of the sales taxes it had paid. The Department denied CAS' refund request.

[¶ 5.] Following the denial, CAS appealed the Department's decision to circuit court. The circuit court held that the fertilizer storage service was entitled to a sales tax exemption for "agricultural services." The court concluded that the storage was classified as "agricultural services" under SDCL 10–45–12.1 and major group 07 of the 1987 Standard Industrial Classification Manual (SICM). The trial court reasoned:

> By and through *their members,* CAS is involved in agricultural services. Cenex/Land O'Lakes Coops are agricultural cooperatives made up of local farmers. *Most of the sales by and services provided by the coops are agricultural in nature. Therefore, the end transaction by CAS can only be agricultural,* as the product stored [fertilizer] at the facility *is only agricultural.* The Court finds that because the end *"transaction"* of CAS is an agricultural service, CAS is classified under Major Group 07 for taxation purposes.

(emphasis added). The trial court emphasized that "CAS is classified under Major Group 07, as an [exempt] agricultural ser-

vice, not because the service they provide is necessarily agricultural, but because the companies, which own or make up CAS, are solely agricultural." Thus, the trial court looked at the end transaction and activity performed by the member cooperatives that incorporated CAS, rather than focusing on the predominate activity of, and the separate transaction in which CAS was involved. Although the circuit court acknowledged the "predominate activity and separate transaction" test of *Watertown Coop. Elevator Association v. South Dakota Department of Revenue,* 2001 SD 56, ¶ 12, 627 N.W.2d 167, 172, the court appears to have distinguished that case by finding that CAS was an "auxiliary establishment" of each of the member cooperatives. Under the SICM, auxiliary establishments are given the same classification as the enterprise for which they provide the service. Thus, under the trial court's reasoning, CAS' storage service could be taxed as if it were the member cooperatives' exempt *sale* of agricultural fertilizer to farm customers. The Department appeals.

## ISSUE

**Whether CAS' fertilizer storage service is exempt from sales tax.**

### STANDARD OF REVIEW

[¶ 6.] Our standard of review is set forth in *Graceland College Center v. South Dakota Department of Revenue,* 2002 SD 145, ¶ 5, 654 N.W.2d 779, 782.

> Our standard of review, delineated in SDCL 1–26–36, requires us to give great weight to the findings and inferences made by the Department on factual questions. We examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence. If after careful review of the entire record we are definitely and firmly convinced a

mistake has been committed, only then will we reverse. Questions of law, of course, are fully reviewable.

. . .

[W]hether a statute imposes a tax under a given factual situation is a question of law. Statutes which impose taxes are to be construed liberally in favor of the taxpayer and strictly against the taxing body. Statutes exempting property from taxation should be strictly construed in favor of the taxing power. The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption.

*Id.* (citations omitted).

## DECISION

[¶ 7.] We first determine whether CAS is classified as an "auxiliary" of each member cooperative and therefore entitled to the member cooperatives' end use exemption for the sale of agricultural fertilizer. If CAS is not entitled to the member cooperatives' classification, we must then determine whether CAS is entitled to any other tax exemptions for its fertilizer storage service.

## I.

## CAS was not entitled to an exemption as an auxiliary of each member cooperative.

[¶ 8.] A sales tax is imposed on services. SDCL 10–45–4 provides:

There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state *upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered.* Any service as defined by § 10–45–4.1 shall be taxable,

unless the service is specifically exempt from the provisions of this chapter.

(emphasis added). CAS is a legal business entity (a cooperative) that is performing a service that is generally subject to tax. However, the exemption applied by the circuit court is found in SDCL 10–45–12.1, which provides in part:

The following services enumerated in the Standard Industrial Classification Manual, 1987, as prepared by the Statistical Policy Division of the Office of Management and Budget, Office of the President are exempt from the provisions of this chapter: . . . *agricultural services* (major group 07). . . .

Under these statutes, we generally "use the predominant activity test in deciding if services [are] subject to sales tax. We have also emphasized that 'determinations of taxability should focus on the transaction.' " *Watertown Coop.*, 2001 SD 56, ¶ 12, 627 N.W.2d at 172 (further citations omitted).

[¶ 9.] The Department contends that *Watertown Coop* controls this case. The Department argues that like *Watertown Coop*, there are two separate transactions involved: 1) CAS' fertilizer storage; and 2) individual cooperatives' sales of fertilizer. The Department contends that even if the end transaction of individual cooperatives involves exempt sales of agricultural fertilizer, CAS' business activity is a separate taxable transaction involving fertilizer storage.

[¶ 10.] Like the taxpayer in *Watertown Coop*, CAS responds that the storage transaction is only one step in the sale of fertilizer: a sale starting with the manufacturer and ending with the farm customer. Under CAS' interpretation, there is only one relevant transaction: the sale of fertilizer, and that transaction is exempt because the fertilizer is ultimately used for

agricultural purposes. *See* SDCL 10–45–12.1; 10–45–16.[1]

■ [¶ 11.] The trial court appears to have adopted CAS' argument. In doing so, it distinguished *Watertown Coop* by concluding that CAS was an "auxiliary" of each member cooperative. That distinction is valid only if CAS qualifies as an auxiliary unit of the other cooperatives under the SICM because the SICM classification is specifically incorporated into the exemption statute, SDCL 10–45–12.1.

[¶ 12.] According to the 1987 SICM, "auxiliaries" are establishments that perform "services for other establishments *of the same enterprise*" and, "[a]n enterprise consists of all establishments having *more than 50 percent common direct or indirect ownership.*" SICM 13 (1987). (emphasis added). However, CAS failed to prove that there is more than 50 percent common ownership between any member cooperative and CAS. In fact, that likelihood appears impossible because twelve or more cooperatives each claim to be members of the CAS cooperative leaving no one cooperative with more than 50 percent ownership of CAS.[2]

[¶ 13.] Consequently, CAS is not entitled to the "auxiliary" classification, and we conclude that this case is governed by the predominate activity and separate transaction test utilized in *Watertown*

*Coop.*, 2001 SD 56, 627 N.W.2d 167. In *Watertown Coop*, the taxpayers sold agronomy products to farmers and ranchers. In addition to the sales of agronomy products, the taxpayers' distributors, as part of a separate contract with the taxpayers, provided the farmers and ranchers with production specialists to advise them on which products to buy and how best to use them. *Id.* ¶ 2. The service was provided at no charge to the farmer/rancher who purchased the taxpayers' products. *Id.* ¶ 3. The taxpayers did, however, reimburse the distributors for the actual expenses incurred in providing the service. *Id.* ¶ 2. This Court held that the service provided by the production specialist was a separate taxable transaction from the exempt sale of the agronomy products.[3] *Id.* ¶ 12.

■ [¶ 14.] The same rule applies here. Like *Watertown Coop*, this case involves two separate transactions. One transaction involves the fertilizer storage activity of CAS. The other transaction involves the sale of fertilizer by the other cooperatives. Because the storage service is the predominate activity of CAS, and because that activity is a separate and distinct transaction from the other cooperatives' subsequent sales of fertilizer, the storage service is subject to the service tax under *Watertown Coop* and SDCL 10–45–4.

---

1. SDCL 10–45–16 creates a tax exemption for the gross receipts from the sale of commercial fertilizer used exclusively for agricultural purposes. It provides:

   There are hereby specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by it, gross receipts from the sale of commercial fertilizers, either liquid or solid, when five hundred pounds or more are sold in a single sale to be used exclusively for agricultural purposes.

2. CAS and the member cooperatives are independent legal entities (cooperatives). *See*

SDCL ch 47–15. CAS has not argued it is a more than 50 percent owned subsidiary of any other cooperative. Moreover, CAS is physically separated from the business locations of the members, and it does not share building space, employees or expenses with the others. Furthermore, CAS owns its own warehouse facility, railroad siding and personal property. Finally, CAS does not purchase, own, sell, deliver or bill for fertilizer. CAS simply stores fertilizer for a fee.

3. Although *Watertown Coop* involved the use tax, that distinction is not material here.

[¶ 15.] Having determined that the predominate activity of CAS is a taxable service under SDCL 10–45–4, we next determine whether that service is entitled to a tax exemption.

## II.

### CAS' fertilizer storage service was not exempt from the sales tax under SDCL 10–45–12.1.

[¶ 16.] CAS contends that even if it is not an "auxiliary," its fertilizer storage is an exempt "farm product warehousing and storage" service or an exempt "agricultural service" under another provision in SDCL 10–45–12.1. As previously noted, that statute exempts services enumerated in the Standard Industrial Classification Manual, 1987. The other exempted services include "*agricultural services* (major group 07) ... [and] *farm product warehousing and storage* (industry no. 4221)...." SDCL 10–45–12.1 (emphasis added). We analyze these two claimed exemptions separately.

### A.

### CAS was not engaged in "farm product warehousing and storage" under SICM industry no. 4221.

[¶ 17.] "Farm product warehousing and storage," under SDCL 10–45–12.1, refers to SICM subgroup 4221, which includes "[e]stablishments primarily engaged in the warehousing and storage of farm products." *SICM,* at 271. The SICM identifies "bean elevators," "grain elevators" and "farm product warehousing and storage ..." as examples of enterprises that fall within that classification. *Id.* So also, major group 42, of which subgroup 4221 is a part, "includes establishments

... engaged in the storage of farm products." *Id.* at 270. However, "farm products" are not further defined.

[¶ 18.] Because neither the SICM nor SDCL ch 10–45 defines "farm products," the parties rely on definitions of that phrase found in different versions of Article 9 of the Uniform Commercial Code. CAS relies on the post-July 2001 definition codified in SDCL 57A–9–102(34), while the Department relies on the pre-July 2001 definition codified in SDCL 57A–9–109(3). However, based upon our decision in *Wharf Resources, Inc. v. Farrier,* 1996 SD 110, 552 N.W.2d 610, we reject both parties' use of the UCC to define the "farm products" that are exempt from sales tax under SDCL 10–45–12.1.

[¶ 19.] In *Wharf Resources,* we considered an analogous argument that the taxability of a "mine" should be determined by the definition of a "mine" in SDCL 43–1–5,[4] an unrelated general statute describing real property and property that is appurtenant to land. We rejected the use of such an unrelated statute to determine a tax exemption, stating:

> In matters of statutory interpretation, statutes of specific application take precedence over statutes of general application. SDCL 10–4–2 and 10–6–35 [on taxation] are statutes of specific application. SDCL 43–1–5 is a statute of general application, intended to aid in determining which of those items commonly associated with a mine would be deemed appurtenant to the land. There is no corresponding definition of "mine" contained in the South Dakota taxation statutes found under SDCL 10–4–2 and 10–6–35.

**4.** SDCL 43–1–5 provides in relevant part: "Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

If the legislature intended such equipment to be included in the statutes regarding the taxation of mines, it could have expressed that intention in the statutes. It did not do so.

*Wharf Resources* 1996 SD 110, ¶¶ 42–43, 552 N.W.2d at 617–618 (internal footnotes and citations omitted). Although we recognize that *Wharf Resources* involved imposition of—rather than exemption from—a tax, the principle of general application versus specific application in statutory construction remains applicable.

[¶ 20.] As in *Wharf Resources,* we do not believe that the Legislature intended that the UCC definition of "farm products" would also determine which "farm product warehousing and storage services" are exempt from sales taxation under SDCL ch 10–45. After all, SDCL ch 57A–9 regulates the procedure and rights of debtors and creditors engaged in secured transactions, a purpose wholly unrelated to sales taxation. We therefore conclude that the UCC definition of farm products in SDCL ch 57A–9 does not control the services taxed under SDCL ch 10–4.[5]

[¶ 21.] Because we have not been cited to any fact-specific case resolving this issue, we look to Black's Law Dictionary for guidance. Excluding the UCC definition, *Black's* defines "farming products" as products that are *produced on the farm, by farm labor:*

> All things are considered as "farming products" or "agricultural products" which have a situs of their production upon the farm and which are brought into condition for uses of society by labor of those engaged in agricultural pursuits as contradistinguished from manufacturing or other industrial pursuits.

Black's Law Dictionary 607 (6th ed. 1990).[6]

[¶ 22.] Bulk fertilizer is not a farm product in this sense because it does not have its situs of production on the farm. Furthermore, bulk fertilizer is not produced by the "labor of those engaged in agricultural pursuits," but would be more accurately described as produced by those engaged in manufacturing and industrial pursuits. Therefore, we conclude that CAS did not provide an exempt "farm product" warehousing and storage service under SDCL 10–45–12.1 and SICM industry no. 4221.

### B.

### CAS was not engaged in "agricultural services" under SICM major group 07.

[¶ 23.] CAS next argues that its fertilizer storage involved "agricultural

---

**5.** Prior to July 2001 (the relevant time in which the tax was assessed in the present case) SDCL 57A–9–109(3) provided that goods are "farm products" if:

> ... they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool clip, maple syrup, milk and eggs), and *if they are in the possession of a debtor* engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory.

(emphasis added). This emphasized language of SDCL 57A–9–109(3) reveals that the Legislature only intended the UCC definition of "farm products" to apply to UCC transactions. This conclusion is illustrated by the unique restriction on the definition that limits "farm products" to those "in the possession of a debtor" engaged in farming operations. We can discern no reason why the Legislature would have intended that the taxability of farm product storage services should turn on whether the product is, "in the possession of a debtor." It also appears that this restricted definition would disqualify CAS from the farm product exemption.

**6.** Black's Law Dictionary 7th edition only provides the UCC definition of "farm products." Therefore, we rely on Black's Law Dictionary, 6th edition.

services" under SDCL 10–45–12.1 and SICM major group 07. According to the SICM, agricultural services under major group 07, "includes establishments primarily engaged in performing soil preparation services, crop services, veterinary services, other animal services, farm labor and management services, and landscape and horticultural services, for others on a contract or fee basis." *SICM,* at 31. CAS contends that its service falls within "soil preparation services," under SICM industry group no. 0711, and "crop planting, cultivating, and protecting" under industry group no. 0721.

[¶ 24.] We first address CAS' reliance on industry group no. 0711, "soil preparation services." The SICM describes soil preparation services as "land breaking, plowing, *application* of fertilizer, seed bed preparation, and other services for improving the soil for crop planting." *Id.* (emphasis added). CAS contends that its services should be considered "chemical treatment of soil for crops," which the SICM lists as an example of "soil preparation services." However, CAS is not engaged in the *application* of fertilizer or chemical treatment of the soil. Instead, CAS merely provides a fertilizer storage service.

[¶ 25.] CAS' reliance on industry group no. 0721, "crop planting, cultivating, and protecting," is also misplaced. The relevant SICM example of this activity is "planting crops, with or without fertilizer." *Id.* CAS contends that its service should be considered crop planting. Again, however, there is no evidence that CAS is involved in planting crops. CAS' only activity is fertilizer storage for other cooperatives. That service does not qualify under industry group nos. 0721 or 0711.

## CONCLUSION

[¶ 26.] We conclude that the trial court erred in analyzing CAS as an auxiliary of other cooperatives. Moreover, the fertilizer storage service provided by CAS is a separate transaction from the fertilizer sales made by each of the other cooperatives. Because the fertilizer storage service is not tax exempt, we reverse.

[¶ 27.] SABERS and KONENKAMP, Justices, and AMUNDSON, Retired Justice, concur.

[¶ 28.] GILBERTSON, Chief Justice, concurs in result.

GILBERTSON, Chief Justice (concurring in result).

[¶ 29.] I agree with this Court that factually, the CAS fertilizer storage service is not exempt from South Dakota sales tax. However, this Court's reliance upon *Watertown Coop. Elevator Association v. South Dakota Department of Revenue,* 2001 SD 56, 627 N.W.2d 167, causes me to concur only in result. I continue to believe that *Watertown Coop* was improperly decided by this Court for the reasons set forth in my dissent. *Watertown Coop.,* 2001 SD 56, ¶ 20, 627 N.W.2d at 173 (Gilbertson, J., dissenting).