#23966-aff in pt, rev in pt & rem-SLZ

**2007 SD 90**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GARY MAUCH, License No.
13-001-000141941T-ST-001,                    Petitioner and Appellant,

  v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE AND REGULATION,              Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

* * * *

HONORABLE STEVEN R. JENSEN
Judge

* * * *

JEFFREY L. BRATKIEWICZ
WILLIAM G. TAYLOR
CHERI S. RAYMOND of
Woods, Fuller, Shultz & Smith, P.C.            Attorneys for petitioner
Sioux Falls, South Dakota                          and appellant.

JACK C. MAGEE
DONALD W. HAGEMAN
South Dakota Department of
Revenue and Regulation
Pierre, South Dakota                                Attorneys for respondent
                                                              and appellee.

* * * *

ARGUED AUGUST 29, 2006
REASSIGNED FEBRUARY 20, 2007

OPINION FILED **08/22/07**

#23966

ZINTER, Justice (on reassignment).

[¶1.]      Gary Mauch appeals a Department of Revenue and Regulation decision assessing sales tax on engineering services he provided.  Mauch also appeals the Department's assessment of use tax for accounting and legal services that were provided to Mauch by out-of-state accountants and attorneys.  We reverse the assessment of sales tax on the engineering services, affirm the assessment of use tax, and remand.

I.

[¶2.]      Mauch obtained a one-year technical degree in drafting and design technology in 1972.  Thereafter, he started working as a draftsman for Beehive Machinery Inc., in Salt Lake City, Utah.  Beehive manufactured specialized machinery used in the meat processing industry to separate meat from bone.  During his employment with Beehive, Mauch held the positions of Chief Draftsman, Acting Engineering Director, and Chief Products Engineer.  Mauch's duties included design and modification of standard and custom food processing machinery.  He also trained the new Engineering Director.

[¶3.]      Mauch met Eldon Roth during Mauch's employment with Beehive.  Roth is the founder and majority owner of Beef Products Inc. (BPI), a company that uses custom designed meat processing machinery to eliminate bacteria and pathogens from meat and sells meat to other food processing companies.  In 1986, Mauch accepted an engineering position with BPI in its Nevada City, California facility.  After six months, Mauch left BPI's Nevada City facility and began working

as an independent contractor. He continued to provide services for BPI and was also hired by Multi-Fill[1] to design and improve its equipment.

[¶4.] In 1994, Roth contacted Mauch in an effort to obtain his engineering services more exclusively in connection with BPI's facilities. BPI's headquarters are in Dakota Dunes, South Dakota. However, all of its processing facilities are located outside South Dakota. Roth wanted Mauch to help design new machinery for use in BPI's out-of-state facilities. Mauch accepted the offer. He and his family bought a home in Burbank, South Dakota, where he lives and works.

[¶5.] In the course of this employment, Mauch attended meetings with Roth in which the two "brainstormed" for ideas to improve and design BPI equipment. The meetings were either held at Mauch's home or at BPI headquarters in Dakota Dunes. Mauch drafted most of BPI's dimensional drawings with the assistance of BPI's drafters. The designs were then reviewed at BPI headquarters to ensure that they met BPI's quality standards. If BPI approved the designs, it sent them to out-of-state machine shops for construction. After construction, the machines were sent to BPI plants for installation. Mauch occasionally visited the out-of-state plants to ensure proper installation.

[¶6.] In 2003, the Department audited Mauch's engineering business. The audit resulted in an assessment of tax, interest, and penalties in the amount of $70,641.32. The assessment was imposed for sales tax on the engineering services

---

1. Multi-Fill sells food packaging equipment. The Department did not assess any tax for Mauch's services provided to Multi-Fill.

Mauch provided to BPI and use tax on legal and accounting services that were provided to Mauch's business by out-of-state firms.

[¶7.]        Mauch disputed the Department's assessment and requested a hearing under SDCL 10-59-9.  Following the hearing, an independent hearing examiner proposed findings of facts and conclusions of law reversing the sales tax assessment and upholding the use tax assessment.  The Department rejected the hearing examiner's findings of fact and conclusions of law and imposed its original assessment.  Mauch appealed to circuit court.  The circuit court affirmed the Department's assessment, and Mauch appeals raising the following issues:

1. Whether the engineering services Mauch provided BPI were exempt from sales tax under SDCL 10-45-12.2.

2. Whether the engineering services Mauch provided BPI were exempt from sales tax under SDCL 10-45-12.3 (repealed SL 2003, ch 61, section 3).

3. Whether the accounting and legal services provided to Mauch were exempt from use tax under SDCL 10-46-2.1.

4. Whether Mauch was entitled to an abatement of interest and penalties under SDCL 10-59-6 or SDCL 10-59-28.

[¶8.]        "Questions of law, such as the question whether a statute imposes a tax under a given factual situation, are reviewed de novo."  In the Matter of Choice Hotels International, Inc. v. SD Dept. of Rev. and Reg., 2006 SD 25, ¶9, 711 NW2d 926, 928.  Further, "[s]tatutes allowing tax exemptions are exactingly and narrowly construed in favor of the taxing entity."  Watertown Coop. Elevator Ass'n v. S.D. Dept. of Rev., 2001 SD 56, ¶10, 627 NW2d 167, 171.

II.

*Engineering Services Exemption Under SDCL 10-45-12.2*

[¶9.]          Four statutes govern sales taxation on engineering services.  SDCL 10-45-4 imposes a broad sales tax on services in general:

> There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the gross receipts of any person from the engaging or continuing in the practice of any business in which a service is rendered.  Any service as defined by § 10-45-4.1 shall be taxable, unless the service is specifically exempt from the provisions of this chapter.

SDCL 10-45-4.1 defines "service" as "all activities engaged in for other persons for a fee, retainer, commission, or other monetary charge, which activities involve predominantly the performance of a service as distinguished from selling property." "Engineering services" are specifically captured by SDCL 10-45-5.2.  However, SDCL 10-45-12.2 provides an exemption if the "engineering services" are classified in Group No. 871 of the Standard Industrial Classification Manual, 1987 (SIC Manual) and they are for projects located entirely out-of-state:

> There are specifically exempted from the provisions of this chapter and from the computation of the amount of tax imposed by §§ 10-45-4 and 10-45-5, the gross receipts from engineering, architectural, and surveying services ([G]roup [N]o. 871, Standard Industrial Classification Manual, 1987, as prepared by the Statistical Policy Division of the Office of Management and Budget, Office of the President) rendered for a project entirely outside this state.

*Id.*  Therefore, in order for Mauch to be entitled to the exemption provided by SDCL 10-45-12.2, he had the burden of showing that his services were classified as "engineering services" under SIC Group No. 871 and that such services were rendered for projects outside of South Dakota.

-4-

[¶10.]     Industry Group No. 871 of the SIC Manual is titled "Engineering, Architectural and Surveying Services." Industry No. 871 describes "Engineering Services" as "[e]stablishments primarily engaged in providing *professional* engineering services." (Emphasis added.)

[¶11.]     The hearing examiner acknowledged that Mauch was not licensed as a "professional" engineer in South Dakota and did not have an engineering degree. However, the hearing examiner concluded that Mauch provided professional engineering services because of his knowledge and experience. On the other hand, the circuit court agreed with the Department's position that in order to be entitled to the tax exemption, Mauch was required to be licensed as a "professional" engineer by the South Dakota Board of Technical Professions under SDCL ch. 36-18A, the chapter regulating the practice of architecture and engineering.

[¶12.]     At the outset it must be noted that the *statutes* capturing and exempting these services do not refer to "professional" engineering services: those statutes only refer to "engineering services." There is also no statutory reference in the tax statutes requiring licensure. With respect to SIC Manual Group No. 871, it is equally important to note that it is only intended to classify types of economic activity rather than the status of the individuals providing the economic activity in that industry.[2] Additionally, although the SIC Manual contains "professional

---

2.    The Standard Industrial Classification (SIC) is a system for classifying establishments by type of economic activity. Its purposes are: (1) to facilitate the collection, tabulation, presentation, and analysis of data relating to establishments, and (2) to promote uniformity and comparability in the presentation of statistical data describing the economy. The SIC is used by agencies of the United States Government that collect or publish data by

(continued . . .)

#23966

engineering services" language, there is no definition of a "professional engineer" in the SIC Manual. Finally, one specific example for this industry included services provided by "machine tool designers," the service that Mauch appears to have provided. Nevertheless, the Department concluded that SDCL ch 36-18A, the chapter regulating the *practice* of architecture and engineering, should be incorporated into the tax code to determine the *taxability* of engineering services. We conclude that the incorporation of this regulatory engineering practice chapter into the unrelated sales tax statute**s** was incorrect for three independent reasons.

[¶13.] First, the incorporation of these unrelated statutes is at odds with the statutory rule governing when definitions in one part of the code may be used in others. SDCL 2-14-4 provides: "Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." Here, the words and phrases are not the same and a contrary intention plainly appears. SDCL 36-18A-1(24) defines a "professional engineer" as a person who is licensed and legally authorized to practice engineering in the state. However, neither the tax statutes imposing the tax on services (SDCL 10-45-4 and 10-45-5.2) nor the engineering exemption (SDCL 10-45-12.2) use the words "professional" or

---

(. . . continued)
    industry. It is also widely used by state agencies, trade association, private businesses, and other organizations.

    SIC Manual, Appendix B: "Principles and Procedures for the Review of the SIC," §A, p699.

"engineer." Rather, the words used in the tax statutes[3] only refer to "engineering services." *See* SDCL 10-45-5.2; SDCL 10-45-12.2. Therefore, because the phrase in the tax statutes is not the same as the phrase used in the regulatory statutes, the general rule of incorporation under SDCL 2-14-4 is inapplicable.

[¶14.] Moreover, even if the general rule were applicable, the regulatory definition may not be incorporated into the tax exemption because the exception in SDCL 2-14-4 applies. This exception prohibits incorporation "where a contrary intention plainly appears." *Id.* In this case, SDCL 36-18A-1 provides that definitions in SDCL ch. 36-18A only apply to "[t]erms used in *this chapter* [SDCL ch 36-18A]." (Emphasis added.) Therefore, the regulatory definition of a professional engineer is expressly confined to SDCL ch. 36-18A, and it does not apply to other, unrelated chapters like SDCL ch. 10-45.

[¶15.] Second, by incorporating the regulatory definition of a professional engineer into the tax code, the Department failed to follow this Court's precedent. In two recent cases this Court concluded that analogous statutory definitions, unrelated to sales taxation, may not be incorporated into the tax code to define and determine a sales tax exemption. In *Cooperative Agronomy Services v. S.D. Dept. of Rev.*, 2003 SD 104, ¶18, 668 NW2d 718, 723, we held that the definition of "farm products" found in SDCL 57A-9-102(34) (Article 9 of the UCC) could not be used to define the term, and therefore determine entitlement to a tax exemption for, "farm products" in SDCL 10-45-12.1. We explained:

---

3. We also note that the phrase "professional engineer" only appears in the SIC Manual, a reference to which SDCL 2-14-4 does not purport to apply.

> [W]e do not believe that the Legislature intended that the UCC definition of "farm products" would also determine which "farm product warehousing and storage services" are exempt from sales taxation under SDCL ch 10-45. After all, SDCL ch 57A-9 regulates the procedure and rights of debtors and creditors engaged in secured transactions, a purpose wholly unrelated to sales taxation.

*Id*. ¶20.

[¶16.]     Similarly, in *Wharf Resources (USA) Inc. v. Farrier*, 1996 SD 110, 552 NW2d 610, this Court was required to determine whether equipment and other things affixed to a mine were exempt from taxation because of a general, unrelated real property definition of a "mine" in SDCL 43-1-5. We again rejected the incorporation of unrelated statutes to define and determine taxability, explaining:

> SDCL 43-1-5 is a statute of general application, intended to aid in determining which of those items commonly associated with a mine would be deemed appurtenant to the land. There is no corresponding definition of "mine" contained in the South Dakota taxation statutes found under SDCL 10-4-2 and 10-6-35.

*Wharf Resources*, 1996 SD 110, ¶42, 552 NW2d at 618.

[¶17.]     The Department's interpretation[4] also fails to follow our

---

4.  The premise of the Department's argument is incorrect. The Department concedes that Mauch "may fall within the definition of engineer and he may provide engineering services. However, it is undisputed that he is not licensed in South Dakota pursuant to SDCL 36-18A." (Appellee's Br. 10). From this, the Department argues that because Mauch is not a professional engineer, he "is prohibited from providing professional engineering services within this state."

Although many engineering services provided in this state must be provided by a licensed professional engineer, virtually *identical* engineering services are simultaneously exempted from the licensure requirement based upon the user or the size of the project. *See* SDCL 36-18A-9 (allowing many engineering services to be provided by unlicensed engineers). For example, the preparation of plans for two to four family dwellings and ranch buildings

(continued . . .)

precedent requiring that taxability be determined based on the nature of the services provided rather than the character or status of the individual providing a service. This Court has been quite clear that in deciding analogous exemption disputes, "we use the predominant *activity* test in deciding if services [are] subject to sales tax." Watertown Co-op. Elevator Ass'n v. S.D. Dept. of Rev., 2001 SD 56, ¶12, 627 NW2d 167, 172 (emphasis added) *(*citing Nash Finch Co. v. S.D. Dept. of Revenue, 312 NW2d 470, 472 (SD 1981). *Accord,* EG & G, Inc. v. Director of Revenue, 94 NM 143, 607 P2d 1161, 1164 (NMCtApp 1979) ("predominant ingredient" test). "We have also emphasized that 'determinations of taxability should focus on the *transaction*.'" *Id.* (citing Sioux Falls Newspapers, Inc. v. Secretary of Revenue, 423 NW2d 806, 809 (SD 1988)) (emphasis added). Therefore, "[i]t is the similarity in the *transactions* and not the character of the participants upon which we must focus" in determining eligibility for service exemptions. *Sioux Falls Newspapers, Inc.*, 423 NW2d at 808 (emphasis in original). This focus on the transaction rather than the character of the service provider is understandable because this is a tax on services, and therefore, the tax statutes specifically refer to

_____

(. . . continued)
does not require licensure. *Id*. Similarly, plans for building or remodeling hospitals, hotels, restaurants, libraries, offices, and retirement homes do not require licensure if the projects are four thousand square feet or less. *Id*. Therefore, the Department is incorrect in arguing that one must be a professional engineer to render any engineering services in the State. It also makes little sense that the taxability of virtually identical engineering services would be determined by the nature of the user of the services or the size of the project when those additional qualifications do not appear in the tax statutes or the SIC Manual.

the nature of the "services" being provided rather than the status of the individual providing those services. *See* SDCL 10-45-4; SDCL 10-45-5.2; SDCL 10-45-12.2.

[¶18.]     Third, the Department's interpretation is contrary to legislative intent. It is hard to imagine that the Legislature had sales taxation on its mind in 1996, when it revised the regulatory statutes governing the practice of engineering. It is also hard to imagine that, in revising the regulatory statutes, the Legislature could have intended that the regulatory definition of a "professional engineer" applied to the tax code because those words are not in the tax code: they are only found in the SIC Manual. And, the Legislature could not have intended that licensure be required because the SIC Manual is only a listing of establishments by type of economic activity,[5] the SIC Manual was not designed for non-statistical purpose, such as a state's sales taxation.

> The SIC system is designed for statistical purposes. Although the classification is also used for various administrative purposes, the requirements of government agencies that use it for nonstatistical purposes play no role in development and revision of the SIC.

SIC Manual, Appendix B: "Principles and Procedures for the Review of the SIC," §A, p699.

[¶19.]     We finally note that the Legislature could not have intended that the licensure requirements of SDCL ch 36-18A would determine the taxability of Mauch's engineering services. To do so, the Legislature would have had to intend that SDCL 36-18A-1(24) apply retroactively. The regulatory statutes became

---

5.     *See supra* note 3.

effective July 1, 1999; however, the engineering services at issue were provided between January 1998 and December 2000. Therefore, a substantial portion of the engineering services had already been provided by the time SDCL 36-18A-1(24) was enacted, and the Legislature prohibits such retroactive application of its statutes "unless such intention plainly appears." SDCL 2-14-21.

[¶20.]     For all of the foregoing reasons, the Department erred in incorporating the regulatory definition of a professional engineer in SDCL 36-18A-1(24) into SDCL 10-45-12.2, an unrelated sales tax statute that does not define engineering services. When tax exemption statutes like SDCL 10-45-12.2 do not define their terms, this Court has consistently looked to plain meaning definitions rather than unrelated statutes. *See Cooperative Agronomy*, 2003 SD 104, ¶21, 668 NW2d at 724 (using *Black's Law Dictionary* to define "farm products" for purposes of determining a tax exemption under SDCL 10-45-12.1); Graceland College Center for Prof. Dev. and Lifelong Learning, Inc., v. S.D. Dept. of Rev., 2002 SD 145, ¶¶7, 8, 654 NW2d 779, 783 (using *American Heritage Dictionary* to define "vocational school" for purposes of determining a tax exemption under SIC Manual Group No. 824 and SDCL 10-45-12.1).

[¶21.]     *Black's Law Dictionary* defines "professional" as: "A person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." (8thed 2004). The *American Heritage College Dictionary* defines "engineer" as, "[o]ne who is trained or professionally engaged in a branch of engineering." 456 (3ded 1997). The record in this case reflects that Mauch met these definitions.

[¶22.] The Department's brief concedes that he has had professional training and extensive experience: "Mauch received a one-year technical degree in drafting and design technology[,] and has many years of experience in the industry." Appellee's Brief, p6. More specifically, he received formal instruction and has had more than thirty years of experience in providing professional engineering services, including the last fifteen years as an independent contractor providing design and engineering services. He was the acting engineering director of a similar company and has been designing this type of machinery since 1974. Unquestionably, through his education and extensive experience, Mauch received adequate training and proficiency to qualify him to design and engineer the specialized machines at issue and to qualify him as a professional. Therefore, we conclude that Mauch was providing professional engineering services.

[¶23.] Because Mauch provided professional engineering services as classified in SIC Manual Group No. 871, we must next determine whether the services were provided for projects "entirely outside this state." *See* SDCL 10-45-12.2. The evidence reflects that the services were only for projects and machines in plants that were located entirely outside South Dakota. The Department concedes this issue in its brief:

> [T]he machines and component parts are manufactured by vendors outside of South Dakota and are assembled at various meat packing facilities located around the country. None of the machines are placed at plants in South Dakota.

Appellee's Brief, p4-5. Thus, there is no dispute that Mauch satisfied the second test for exemption under SDCL 10-45-12.2.[6]

[¶24.] We therefore conclude that Mauch's services fell within the description of engineering services found in the SIC Manual Group No. 871 and SDCL 10-45-12.2, and the Department and circuit court incorrectly overruled the hearing examiner's decision allowing the sales tax exemption. Because Mauch was entitled to the exemption for engineering services under SDCL 10-45-12.2, we need not address Mauch's entitlement to the sales tax exemption under 10-45-12.3.

III.

*Assessment of Use Tax for Accounting and Legal Services*

[¶25.] Mauch next argues that he should not have been assessed use tax on accounting and legal services he obtained from out-of-state firms under SDCL 10-46-2.1, which provides in part:

> For the privilege of using services in South Dakota, except those types of services exempted by § 10-46-17.3, there is imposed on the person using the service an excise tax equal to four percent of the value of the services at the time they are rendered.

However, this Court has previously concluded that when similar out-of-state services are used to conduct in-state business, the Department may properly impose use tax. Thermoset Plastics, Inc. v. S.D. Dept. of Rev., 473 NW2d 136, 139 (SD

---

6. Although there was some dispute concerning where Mauch's services were *used*, the Department agreed at oral argument that this question is irrelevant to the exemption under SDCL 10-45-12.2:

> Q (the Court): Where the services were used, that's only relevant under 12.3; that are not even relevant under 12.2, is it?
> A (Department): That's correct. . .

1991). In this case, the hearing examiner, the Department, and the circuit court found that Mauch failed to establish that any of the accounting and legal services were provided for something unrelated to his South Dakota business. On the contrary, the record reflects that he used those services in his engineering service business. Therefore, the use tax was correctly imposed.

IV.

*Abatement of Interest and Penalties*

[¶26.] Mauch finally argues that he is entitled to an abatement of interest and penalties. Because we have concluded that he is entitled to the sales exemption under SDCL 10-45-12.2, we remand for reconsideration of this issue.

[¶27.] Affirmed in part, reversed in part, and remanded.

[¶28.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.