#27282-rev & rem-JMK
**2015 S.D. 82**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PUETZ CORPORATION a/k/a
PUETZ CONSTRUCTION, INC.,                    Plaintiff and Appellee,

v.

SOUTH DAKOTA DEPARTMENT
OF REVENUE,                                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK SMITH
Judge

* * * *

TIMOTHY G. BOTTUM of
Morgan Theeler LLP
Mitchell, South Dakota                       Attorneys for plaintiff and
                                             appellee.


ROSA YAEGER of
South Dakota Department
  of Revenue
Pierre, South Dakota                         Attorneys for defendant and
                                             appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015
OPINION FILED **11/04/15**

#27282

KERN, Justice

[¶1.]	After an audit of the taxpayer's construction management at-risk services, the South Dakota Department of Revenue issued a certificate of assessment against the taxpayer's gross receipts because it determined that the taxpayer's services were subject to contractor's excise tax under SDCL 10-46A-1. The taxpayer challenged the assessment and requested a hearing. The taxpayer asserted that its services were not subject to excise tax because it was not a prime contractor engaged in a realty improvement contract when it provided construction management at-risk services. Ultimately, the circuit court reversed the Department's certificate of assessment, ruling that the taxpayer's services were not subject to a contractor's excise tax under SDCL 10-46A-1. The Department appeals. We reverse the circuit court's decision and remand with direction that the circuit court reinstate the Department's final decision upholding the certificate of assessment.

**BACKGROUND**

[¶2.]	In September 2012, the South Dakota Department of Revenue (Department) commenced an audit on Puetz Construction, Inc.'s (Puetz Inc.) excise tax and sales tax licenses for tax periods June 2009 through June 2012. Puetz Inc. is a South Dakota Corporation located in Mitchell, South Dakota. It engages in multiple construction-related services for both private and public entities. At issue here is whether Puetz Inc.'s construction management at-risk services provided to public and non-profit entities are subject to a contractor's excise tax under SDCL 10-46A-1. An excise tax is imposed under SDCL 10-46A-1 "upon the gross receipts

-1-

of all prime contractors engaged in realty improvement contracts, at the rate of two percent." It is undisputed that Puetz Inc. did not remit excise tax on the gross receipts it received from its construction management at-risk services provided to public and non-profit entities.

[¶3.] Puetz Inc. submits that a construction management at-risk service involves a contract with a public entity whereby the construction manager agrees to provide a completed project for the public entity at a specified cost and by a specified date. The purpose of Puetz Inc.'s construction management at-risk service is to "streamline" the construction "process and better protect government entities from the dire effects of cost overruns, construction delays and unsatisfactory work[.]" Further, with a construction management at-risk service, "the risk, uncertainty and burden of managing construction projects is removed from city or county officials and transferred to an expert in the construction field."

[¶4.] The audit began with a meeting between Auditor Joseph Thury and Puetz Inc.'s chief financial officer Peggy Nolz. Nolz had participated in past audits by the Department and informed Auditor Thury that the Department had not previously imposed excise tax on construction management at-risk services although the issue had been discussed. Auditor Thury examined the language of SDCL chapter 10-46A, a document prepared by the Department entitled "Contractor's Excise Tax Guide," and sample construction management at-risk contracts provided by Puetz Inc. From his review of this information, he determined that Puetz Inc.'s actions in the performance of its construction management at-risk contracts "more clearly align with that of a Prime Contractor

than that of a Construction Manager." Thury therefore concluded that the gross receipts from Puetz Inc.'s construction management at-risk services were subject to excise tax.

[¶5.] As a result of the audit, the Department issued Puetz Inc. a certificate of assessment for $43,020.63, which included $31,879.83 in excise tax and $11,140.80 in interest. Puetz Inc. requested an administrative hearing to challenge the assessment. At the administrative hearing, Auditor Thury testified that in addition to talking to Nolz, he and his supervisor examined the sample contracts and "determined that these construction manager at risk fees will be subject to the prime contractor's excise tax[.]" Puetz Inc. received money from the public entity to pay "the contractors working underneath [Puetz Inc.], [and] had also reported excise tax on all other fees or all other amounts received from [the public entity.]"

[¶6.] In response, Puetz Inc. asserted that it merely acted as a pass-through for the public entities' funds when it paid the subcontractors for work completed. It further claimed that although it paid the contractor's excise tax due on the projects, it did so as part of its construction management at-risk services to the public entities. According to Puetz Inc., "all the excise tax is being paid on the actual construction by the contractors," and, therefore, an excise tax should not be imposed on Puetz Inc.'s services. Puetz Inc. also emphasized that it did not act in the capacity of a prime contractor engaged in a realty improvement contract. Rather, it provided management and inspection services "to ensure the timely and efficient delivery of public projects[.]" Puetz Inc. directed the hearing examiner to SDCL chapter 5-18B, which defines and sets forth the duties related to differing

construction delivery methods. In support of its position, Puetz Inc. also submitted two official Attorney General opinions and one email from the Attorney General's Office as evidence that a construction management at-risk delivery method specifically prohibits the construction manager from acting as a prime contractor when the construction manager is also the architect on a public improvement project. Under the sample contracts, Puetz Inc. is listed as the architect.

[¶7.] During the hearing, Puetz Inc. also presented testimony from Wayne and Mark Puetz. Wayne and Mark explained that the construction manager purchases no materials and performs no actual construction work on the project. They asserted that the prime contractors receive the bids, provide the realty improvement, and engage in the actual construction service contracts. The construction manager, by contrast, supervises and manages the various prime contractors, schedules work, and ensures satisfactory completion of the project at a specified cost and by a specified date.

[¶8.] After the hearing, the examiner issued a written proposed decision holding "that Puetz clearly enters into realty improvement contracts or contracts for construction services." The hearing examiner reasoned that Puetz Inc. acted in the capacity of a prime contractor because it managed the subcontractors, ensured satisfactory completion of the construction projects, and assumed complete responsibility for the entire construction project. The hearing examiner relied on the Standard Industrial Classification Manual (SIC Manual). The SIC Manual is implicated in this case under SDCL 10-46A-2, which statute provides that "[p]rime contractors . . . subject to the tax imposed by § 10-46A-1 include without limitation

those enumerated in the Standard Industrial Classification Manual of 1987 . . . construction (division c)."* According to the hearing examiner, Puetz Inc.'s construction management at-risk service is properly classified in the SIC Manual (division c) Industry Group 1542, "General Contractors-Nonresidential Buildings, Other Than Industrial Buildings and Warehouses."

[¶9.] The hearing examiner rejected Puetz Inc.'s argument that SDCL chapter 5-18B and the Attorney General opinions prevent the imposition of excise tax on construction management at-risk services. It found that the Legislature intended that contractor's excise tax be assessed because the Legislature referred to excise tax in SDCL 5-18B-7 and SDCL 5-18B-17. Furthermore, the hearing examiner determined that a chapter regulating a business practice (chapter 5-18B) does not establish taxability of a business transaction within the tax code (chapter 10-46A) and cited *Mauch v. South Dakota Department of Revenue and Regulation,* 2007 S.D. 90, 738 N.W.2d 537, for this proposition.

---

* In *Mauch v. South Dakota Department of Revenue and Regulation*, we recognized that:

> The Standard Industrial Classification (SIC) is a system for classifying establishments by type of economic activity. Its purposes are: (1) to facilitate the collection, tabulation, presentation, and analysis of data relating to establishments, and (2) to promote uniformity and comparability in the presentation of statistical data describing the economy. The SIC is used by agencies of the United States Government that collect or publish data by industry. It is also widely used by state agencies, trade association, private businesses, and other organizations.

2007 S.D. 90, ¶ 12 n.2, 738 N.W.2d 537, 541 n.2 (quoting the SIC Manual, Appendix B: "Principles and Procedures for the Review of the SIC," § A, p. 699).

[¶10.]    The Department adopted the hearing examiner's proposed decision in full.  Puetz Inc. appealed the decision to the circuit court.  After considering the parties' written briefs and oral arguments, the circuit court issued a memorandum decision, findings of fact and conclusions of law, and an order reversing the hearing examiner's decision.  The circuit court held that the hearing examiner's findings of fact were clearly erroneous and "inconsistent with current statutory construction in South Dakota and the record on this appeal[.]"  The court relied on SDCL 5-18A-1(6) for the definition of a construction manager and SDCL 5-18B-15 for the fact that Puetz Inc. was prohibited from acting as both a construction manager *and* an architect on a public improvement.

[¶11.]    The court also held that the hearing examiner erred when it concluded that Puetz Inc.'s construction management at-risk services fit within the SIC Manual (division c), specifically Industry Group 1542.  According to the court, the plain meaning of the classifications within the SIC Manual (division c) do not include construction management at-risk services.  It noted that the SIC Manual (division c) does not specifically mention the phrase "construction manager at-risk" or identify "an intermediate service provider to the prime contractors" as a building construction general contractor.  The court further emphasized that "the SIC Manual was written in 1987 and does not contain any construction manager-at-risk language or provisions."  Ultimately, the court held that Puetz Inc. was not acting as a prime contractor engaged in realty improvement contracts when it provided construction management at-risk services to public and non-profit entities.

[¶12.] On November 12, 2014, the circuit court issued an order reversing the hearing examiner's decision "in all respects[.]" The Department appeals asserting that the circuit court erred when it reversed the Department's final decision adopting the hearing examiner's decision in full.

## STANDARD OF REVIEW

[¶13.] Our review of this administrative appeal is governed by SDCL 1-26-36. *Manuel v. Toner Plus, Inc.*, 2012 S.D. 47, ¶ 8, 815 N.W.2d 668, 670. "The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact." SDCL 1-26-36. "When, however, the issue is a question of law, we review the decisions of both the administrative agency and the circuit court de novo." *Burke v. Butte Cty.*, 2002 S.D. 17, ¶ 8, 640 N.W.2d 473, 477 (emphasis omitted). Furthermore, we review questions of statutory interpretation de novo. *Nodak Mut. Ins. Co. v. McDowell*, 2010 S.D. 54, ¶ 7, 784 N.W.2d 483, 485. A statute that imposes a tax is "to be construed liberally in favor of the taxpayer and strictly against the taxing body." *Robinson & Muenster Assocs., Inc. v. S.D. Dep't of Revenue*, 1999 S.D. 132, ¶ 7, 601 N.W.2d 610, 612.

## ANALYSIS

[¶14.] The Department asserts that "[t]he law in this matter is clear, and, in this case, the Department correctly assessed contractor's excise tax" on Puetz Inc.'s construction management at-risk services under SDCL 10-46A-1. A prime contractor is defined in SDCL 10-46A-2.2 as "a person entering into a realty improvement contract or a contract for construction services as enumerated in division c of the Standard Industrial Classification Manual, 1987[.]" The

Department acknowledges that the phrase "realty improvement contract" is not defined by statute. However, the Department contends that Puetz Inc. entered into a contract for realty improvement because Puetz Inc. agreed to provide the public entity a completed building—an improvement to realty. The Department further contends that an excise tax under SDCL 10-46A-1 is implicated because Puetz Inc. entered into a contract for construction services listed in the SIC Manual (division c).

[¶15.] Puetz Inc., on the other hand, argues that there is an ambiguity whether SDCL 10-46A-1 applies because "South Dakota's excise tax regime was enacted prior to the creation of the construction manager at risk entity." Puetz Inc. also claims that the definition of "prime contractor" is ambiguous because it is unclear whether the phrase "as enumerated in division c of the [SIC] Manual" applies to both "a person entering into a realty improvement contract" and "a contract for construction services[.]" In light of these alleged ambiguities and the general rule that statutes imposing tax are construed liberally in favor of the taxpayer, Puetz Inc. asserts that the circuit court correctly determined that Puetz Inc.'s construction management at-risk services are not subject to excise tax under SDCL 10-46A-1. *See Nat'l Food Corp. v. Aurora Cty. Bd. of Comm'rs*, 537 N.W.2d 564, 566 (S.D. 1995) (explaining that statutes imposing tax are construed liberally in favor of the tax payer and strictly against the taxing entity).

[¶16.] We begin our interpretation of a statute with its plain language and structure. *State v. Clark*, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164.

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from

> the language expressed in the statute. The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed.

*Id.* ¶ 5 (quoting *In re Guardianship of S.M.N., T.D.N., and T.L.N.*, 2010 S.D. 31, ¶ 9, 781 N.W.2d 213, 271-18).

[¶17.]       Here, SDCL 10-46A-1 "impose[s] an excise tax upon the gross receipts of all prime contractors engaged in realty improvement contracts, at the rate of two percent." A "prime contractor" is defined under SDCL 10-46A-2.2 as "a person entering into a realty improvement contract or a contract for construction services as enumerated in division c of the Standard Industrial Classification Manual, 1987[.]" If not specifically listed in the SIC Manual (division c), SDCL 10-46A-2.2 further provides that "the services must entail the construction, building, installation, or repair of a fixture to realty before the gross receipts are subject to the tax imposed by § 10-46A-1."

[¶18.]       From our review of these statutes, there is no ambiguity. An excise tax under SDCL 10-46A-1 applies if (1) a construction manager is a prime contractor engaged in a realty improvement contract, *or* (2) Puetz Inc.'s construction management at-risk contract is for construction services enumerated in the SIC Manual (division c). Our decision in *AT&T Corporation v. South Dakota Department of Revenue*, supports this conclusion. *See* 2002 S.D. 25, ¶ 8, 640 N.W.2d 752, 754-55. There we interpreted SDCL 10-46A-1, -2, and -2.2 to mean the Legislature intended "that the tax appl[y] to *certain industry contracts* as well as to

*contracts for reality improvements.*"  *AT&T Corp.*, 2002 S.D. 25, ¶ 8, 640 N.W.2d at 755 (emphasis added).  We explained that "SDCL 10-46A-2 declares that excise tax shall be levied on all contractors, prime and sub-, enumerated in division c (construction) of the SIC Manual" and SDCL 10-46A-2.2 imposes the tax on "any contractor not enumerated in division c, whose services entail the construction, building, installation, or repair of a fixture to realty."  *Id.* ¶ 9.  Thus, "excise taxes" apply under SDCL 10-46A-1 "not just to 'prime contractors engaged in realty improvement contracts,' but also to those who 'contract for construction services as enumerated in division c of the Standard Industrial Classification Manual.'"  *Id.* ¶ 8 (quoting SDCL 10-46A-1; SDCL 10-46A-2.2).

[¶19.]          We, therefore, examine whether Puetz Inc.'s construction management at-risk services fall under the SIC Manual (division c).  "If it does, there is no need to decide whether the work also constitutes an improvement to realty."  *See id.* ¶ 10. The SIC Manual (division c) included within the record comprises three pages.  It defines "*The Division as a Whole*" as: "This division includes establishments primarily engaged in construction.  The term construction includes new work, additions, alterations, reconstruction, installations, and repairs.  Construction activities are generally administered or managed from a relatively fixed place of business, but the actual construction work is performed at one or more different sites."  Although division c describes "[t]hree broad types of construction activity[,]" only one is implicated here—"(1) building construction by general contractors or by operative builders[.]"  In regard to this activity, the SIC Manual (division c) provides that "[g]eneral contractors usually assume responsibility for the entire

construction project, but may subcontract to others all of the actual construction work or those portions of the project that require special skills or equipment. General contractors thus may or may not have construction workers on their payroll."

[¶20.] With these concepts in mind, we review the scope of Puetz Inc.'s services. It is undisputed that, as the construction manager, Puetz Inc. did not assume the role of a traditional general contractor. It did not perform actual construction work on the project but instead managed the construction project on a contract or fee basis. However, the SIC Manual (division c) contemplates an activity where "*all* of the actual construction work" is subcontracted to others and the contractor "may or may not have workers on their payroll." (Emphasis added.) Indeed, the introductory text to the SIC Manual (division c) excludes "[e]stablishments primarily engaged in managing construction projects for others on a contract or fee basis, but assuming no responsibility for completion of the construction project[.]" The pivotal inquiry, therefore, is whether Puetz Inc. "*assume*[*d*] *all responsibility for the entire construction project*[.]" (Emphasis added.)

[¶21.] From our review of the record, Puetz Inc. assumed all responsibility for the entire construction project as part of its construction management at-risk services. In its brief to this Court, Puetz Inc. explained that the construction manager "agrees to provide services that include completion of a specific project for the government entity at a specified cost to be completed by a specified date." Further, the construction manager "requests bids from Prime Contractors for the various aspects of the project, handles the scheduling and management of the

various Prime Contractors and ensures the timely and satisfactory completion of the project." Therefore, although Puetz Inc. does not perform actual construction on the project, Puetz Inc.'s construction management at-risk contract is "for construction services as enumerated in division c of the Standard Industrial Classification Manual" and is, therefore, properly subject to excise tax under SDCL 10-46A-1.

[¶22.]		Nonetheless, Puetz Inc. claims that it cannot be subject to excise tax under SDCL 10-46A-1 because "it would be illegal" under SDCL 5-18B-15 for Puetz Inc. to be the prime contractor on a project when it also acts in the role of an architect. SDCL 5-18B-15 provides in relevant part that "[n]o person, firm, or corporation may act as architect or engineer and also contractor on any public improvement project if the amount to be expended exceeds one hundred thousand dollars." Puetz Inc. further directs this Court to several South Dakota Attorney General opinions in which the construction management at-risk construction method was examined and the Attorney General opined that a construction manager is prohibited from performing actual construction work as a contractor when also acting as an architect.

[¶23.]		First, SDCL chapter 5-18B regulates the rights and actions of parties related to the procurement of public contracts, not whether a certain service is subject to taxation. Second, simply because Puetz Inc. cannot be a *contractor* and an *architect* under chapter 5-18B does not mean that the Department cannot impose excise tax on Puetz Inc.'s construction management at-risk services. On the contrary, tax is imposed here because SDCL 10-46A-1 embraces Puetz Inc.'s

-12-

construction management at-risk services. Puetz Inc. does not perform the actual construction but the "establishment" assumes all responsibility for the entire construction project. *See* SDCL 10-46A-2.2; The SIC Manual (division c).

## CONCLUSION

[¶24.] Puetz Inc., in its capacity as a construction manager, entered into a contract with a public entity to guarantee a satisfactorily completed public improvement project by a specific date for a specific cost. This service is subject to excise tax under SDCL 10-46A-1. The circuit court erred when it reversed the hearing examiner's decision "in all respects[.]" We reverse the circuit court's decision and remand with direction that the circuit court reinstate the Department's final decision upholding the certificate of assessment.

[¶25.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.